UNITED STATES of America, Appellee,

v.

Jerome Lester REIDE, Appellant.

No. 495, Docket 73–2168.

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1973.

Decided March 29, 1974.

Raymond J. Dearie, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellee.

Kristin Booth Glen, New York City, for appellant.

Before MOORE, HAYS and TIMBERS, Circuit Judges.

PER CURIAM:

Appellant appeals from his conviction for contempt arising from his citation by Judge Weinstein for his refusal to answer questions put to him during a Grand Jury investigation. Previous to this investigation, Reide had been adjudged a delinquent for his participation in a bank robbery. The Grand Jury was investigating whether there had been any additional persons involved beyond those already apprehended. Upon being called, Reide refused to answer any of the questions put to him and requested an attorney. Frank Lopez, Esq., was appointed. Reide confided in him that he had been "convicted" not only of the bank robbery but also of a manslaughter charge. What Reide did not confide was the fact of an outstanding weapons charge in the Eastern District, entirely unrelated to the bank robbery in question.

The Assistant District Attorney advised Mr. Lopez that he could not imagine how Reide could incriminate himself further by answering questions concerning the robbery. However, it was stated that if Reide wished to waive his Fifth Amendment rights, he would be granted immunity. Mr. Lopez then, not sensing any potential incrimination, advised Reide to answer. Reide again refused to answer and was cited for contempt. After a jury trial he was convicted and sentenced to a six-month sentence to run concurrently with a federal sentence imposed for a previous violation of the Federal Juvenile Delinquency Act.

Counsel for appellant advises us that this case presents "a veritable casebook of constitutional issues." Certainly a great number of errors are alleged and couched in Constitutional terms. Upon inspection, however, it appears that none of the supposed errors rise to reversible status.

■ It is suggested at the onset that appellant should have been given *Miranda* warnings before being asked to testify. This failure, it is claimed, should void the contempt conviction. This argument fails for the reason that Reide never did testify. In addition, Reide had counsel present and had been given advice concerning his Fifth Amendment privileges. Further, since he had already been adjudged guilty of the robbery, he had no right to remain silent on matters concerning it; thus the *Miranda* warnings were not called for.

■ To overcome some of the difficulties above, appellant urges that he would not have been protected by double jeopardy had he answered. Numerous speculative answers are suggested to the questions Reide refused to answer. Each of these answers might have had the effect of incriminating him further. These answers, however, do not meet the test laid down in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L. Ed. 1118 (1951). That case stated:

> The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself . . . [However] [t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

341 U.S. at 486–487, 71 S.Ct. at 818.

Appellant refused to say anything: he refused even to claim the Fifth Amendment. Judge Weinstein then properly instructed appellant to answer the questions, although only as they related to the robbery. If one of the speculative answers suggested was in fact correct, a response could have been framed with advice of counsel to avoid any incrimination or at least some inkling could have been conveyed to the Judge, perhaps by claiming a Fifth Amendment immunity, that appellant was legitimately afraid of making an injurious disclosure. As it was, appellant's blanket refusal to respond, even to give his name, left Judge Weinstein with no choice.

■ Appellant argues that, since his attorney was unaware of the impending weapons charge, he (Reide) was denied

his right to effective counsel. Of course, the weapons charge, totally unrelated to the bank robbery, would not have supported Reide's refusal to testify and thus, the advice given him by his attorney, although given in ignorance of the charge, was in fact correct.

■ The next argument raised by appellant is that the failure of the government to disclose the weapons count represents a suppression of evidence and should result in a reversal. This argument is also without merit. Unwitting non-revelation of irrelevant evidence certainly does not rise to the level of reversible error.

■ Appellant next contends that the Grand Jury was performing an improper function in that it was being used to prepare the weapons case against Reide. This in appellant's eyes would excuse his contempt. However, no shred of evidence is presented that would suggest such an abuse.

■■ Following this line of attack, it is also argued that appellant was improperly denied an opportunity to examine the minutes of the Grand Jury to determine whether it was serving a proper purpose or not. Barring this requested inspection, appellant contends the court should have reviewed the minutes *in camera* to insure that there was no misconduct. In support of his position, appellant alleged that the minutes of the Grand Jury were entitled "United States of America against Fred Fernandez", that Fred Fernandez was already under indictment and that there was no need to re-indict him; that no other persons beside Reide were called to testify; and that forty-five days had elapsed since the beginning of the investigation and no indictment had been returned. This, appellant contends, formed a prima facie case sufficient under Fed.R.Crim.P. 6(e) to require the revealing of the Grand Jury minutes. This argument runs afoul of two facts. First, a Grand Jury need not necessarily return an indictment; it has a legitimate interest merely in investigating a crime. Sec-

ond, the questions asked Reide could not be construed as an attempt to build a foundation for the weapons case. Thus, the Judge properly denied the motion.

■ Appellant's next argument concerns the allegedly improper limitations placed upon him during the presentation of his case. Appellant had wished to call Daniel Meyers, his lawyer in a prior proceeding, and Judge Weinstein. Mr. Meyers' testimony was severely limited, many of the questions put to him being categorized as irrelevant. Appellant's attorney had hoped to elicit from him testimony concerning the weapons charge and plea bargaining. The Judge was correct, however, in ruling that the facts relating to the guns charge were irrelevant to the present prosecution. If it could be shown that the prosecution deliberately suppressed the guns charge before the Grand Jury investigation, or if it could be shown that there was a prima facie case of Grand Jury misuse, then these matters might carry some weight. In the present circumstances, the Judge was correct in limiting the testimony. Appellant also wished to call Judge Weinstein who, it was alleged and eventually stipulated, would have testified that he knew nothing of the weapons charge. It was suggested by appellant's counsel that Judge Weinstein might have testified that if he had known of the outstanding charge, he would not have held Reide in contempt. However, appellant was not allowed to call the Judge, and this latter portion of possible testimony was held to be irrelevant. This ruling was proper. Judge Weinstein, at that time, was neither the judge in this case nor the jury. It is true that a contempt citation is a matter in discretion of the judge who gives it, but in this case it was for current trier of fact to determine whether or not the unknown fact of the weapons charge would have swayed the Judge in the prior proceeding.

■ Finally, it is contended that the summation of the prosecutor was improper and denied appellant due process

of law. The Assistant District Attorney, it is admitted, improperly referred to appellant's conviction for bank robbery when, in actuality appellant had merely been found guilty and "adjudged" a delinquent. It is also argued that beyond this one "conspicuous" error, the summation, taken as a whole, goes beyond the line "which distinguishes permissible advocacy from improper excess." United States v. White, 486 F.2d 204 (2d Cir. 1973). Naturally the judgment required here is a very subjective one. Reviewing both summations, there are criticisms which might be made of each; however, on balance, it cannot be said that the summation of the prosecutor was so flawed so as to have denied appellant due process.

Each argument raised by appellant having been considered in turn and found to be insufficient for reversal, the judgment of the court below is affirmed.