**Application of George B. JORDAN, Jr.**

**Crim. No. 75–189CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Oct. 12, 1977.

Donald A. Lambert, Charleston, W. Va., for plaintiff.

John A. Field, III, Charleston, W. Va., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

In December 1975, George B. Jordan, Jr., and another man were named as "co-conspirators but not as defendants" in an indictment voted by the then-impanelled Federal Grand Jury in the Southern District of West Virginia. In the indictment, the Grand Jury directly charged Jordan with knowing, continuous, willful and unlawful combination and conspiracy with two named defendants to violate the laws of the United States and to extort monies from an individual in return for a bank charter approval. The Grand Jury did not indict Jordan, who at the time of the alleged conspiracy was Commissioner of Banking for the State of West Virginia. The two persons named as defendants were tried and, on May 5, 1976, acquitted of the charges against them. *United States v. Arch A. Moore, Jr. and William H. Loy,* 423 F.Supp. 858.

Jordan has petitioned the Court to have his name expunged from the indictment and all references to him in accompanying or subsequent official documents removed. He argues that in being named but not indicted, he has been deprived of his due process right to either be formally charged and permitted to defend himself at trial, or else remain uncharged and unstigmatized. Petitioner further argues that the action of the Grand Jury was *ultra vires* because the grand jury is empowered only to hear evidence and either indict or not indict, based upon a determination that there is probable cause to believe the accused committed a crime. Finally, petitioner argues that the Grand Jury's written public comment about an individual under investigation whom it has not voted to indict is a violation of the duty and oath of secrecy by which the Grand Jury is bound under Rule 6(e) of the Federal Rules of Criminal Procedure.

In reaching a decision, this Court has read and considered many cases which have discussed the history and function of

grand juries, and in particular, the federal grand jury. However, as the petitioner and the Government are aware, there has been only one opinion of a federal court that has focused upon facts closely resembling those in the instant case. *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975).[1] After a close study of the legal precedents, this Court must follow the lead of the Fifth Circuit and holds that it is beyond the power of the federal grand jury to accuse an individual, by name, of criminal misconduct in an indictment and then fail to return an indictment against him. In specifically identifying an individual as an unindicted co-conspirator, the grand jury violates its duty to serve as protector of all those whom it investigates but chooses not to put to trial.

 The dual role of the grand jury as investigator and protector is not embodied in a catalogue of regulations and rules for grand jury behavior but rather is described in the case law and legal authorities and passed along as part of our common law heritage. The Supreme Court has commented:

> The institution of the grand jury is deeply rooted in Anglo-American history . .
> The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions. *Branzburg v. Hayes*, 408 U.S. 665, 686–687, 92 S.Ct. 2646, 33 L.Ed.2d 623 (1972).
> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry . . .
> The scope of the grand jury's powers reflects its special role in insuring fair

and effective law enforcement. A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person . . .

*United States v. Calandra*, 414 U.S. 338, 342–344, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1973). It is clear that a grand jury need not return an indictment. It has a legitimate interest merely in investigating alleged criminal activity. *United States v. Reide*, 494 F.2d 644 (2d Cir. 1974). Recognition of that interest underscores the importance of the secrecy of the proceedings—it serves to protect the citizen who is being investigated where there is no public charge. If the citizen is *indicted*, the reason for secrecy ends. *United States v. Smyth*, 104 F.Supp. 283 (N.D.Cal.1952). If no indictment is issued, the cloak of secrecy remains in place:

> to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation and from the expense of standing trial where there was no probability of guilt.

*In re William H. Pflaumer & Sons, Inc.*, 53 F.R.D. 464, 470 (E.D.Pa.1971). *See, generally, United States v. Amazon Industrial Chemical Corp.*, 55 F.2d 254 (D.Md.1931).

In the instant case, one can only speculate why the Grand Jury issued an indictment which also named Jordan as an unindicted co-conspirator.[1a] It is quite clear no mention was made in the Charge to the Grand Jury of the possibility of the return of a hybrid form of accusation. Among other things, grand juries in the Southern District of West Virginia are instructed:[2]

> The United States Attorney or his assistants will be present in the grand jury room to assist you and to advise you as to

---

**1.** Noted in 7 Toledo Law Review 245 (Fall 1975); 54 Texas L.Rev. 663 (1976); Seton Hall L.Rev. 7:484 (1976).

**1a.** The Handbook for Federal Grand Jurors prepared by the Judicial Conference of the United States does not make any mention of unindicted co-conspirators.

**2.** The Charge to the Grand Jury appears in its entirety as Appendix A of this Opinion.

the law. You are to consider these presentments and you should indict if you find from the evidence presented to you, unopposed by any other evidence, that probable cause exists. If you find probable cause that a person should be put upon his or her trial upon any charge, then you should return an indictment as a true bill in such a case.

While the United States Attorney or his assistants will assist you and question witnesses, again let me say that any grand juror is entitled to question any witness who appears before you on any matter germane to your inquiry, but no person other than you as grand jurors should be present in the grand jury room at the time you vote on any indictment and, of course, it goes without saying that it would be something more than an impropriety if the United States Attorney or his assistants should seek to influence your vote in any way upon any indictment being considered by you.

You serve historically a twofold purpose as grand jurors. First of all you stand as a defense, you might say, between the Government of the United States and the citizens to see that no person is brought to trial upon a frivolous or ill-found charge, but on the other hand you likewise serve as a constitutional instrumentality to see that the citizens of the United States are protected and that anyone who in your opinion under the evidence presented to you should be brought to trial should in that event be subject to an indictment.

You are not concerned with the ultimate innocence or guilt of a person who is charged with a crime because that issue would be tried by a petit jury of twelve men and women.

It goes without saying that in your service many matters will be disclosed to you. They should be kept confidential; they should be kept secret. You should not divulge anything that goes on in your grand jury room to anyone, nor under any circumstances except in response to the lawful process of a court. I cannot caution you too earnestly on this matter of secrecy because it would be a rather unfortunate thing if the proceedings before a grand jury were to become common gossip in the streets. . . .

It is possible that the indictment returned by the Grand Jury named Jordan as an unindicted co-conspirator because that is the way the United States Attorney for the Southern District of West Virginia phrased the document that he brought to the Grand Jury and which it then voted as a true bill. The decline of the independence of the grand jury in the wake of increasing complexity of crime, and the expanding role of the prosecutor is well known:

> It is now the United States Attorney who gathers the evidence for later presentation to the grand jury. He calls and examines witnesses, presents documents, explains the law, sums up the evidence and requests an indictment.

*United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 521 (E.D.N.Y.1974). If this was the reason for the Grand Jury's action, there can be no justification for it. If the grand jury acts outside its powers on false advice or innocent suggestion, the action is still not legitimate. Stated more strongly, "the grand jury is not the private tool of the prosecutor". *United States v. Fisher*, 455 F.2d 1101, 1105 (2d Cir. 1972). The fact that federal prosecutors in the past have obtained grand jury indictments which name unindicted co-conspirators should not dull judicial sensibilities to the impropriety of the action.[3] At issue is not

---

3. See, for example, the confusion concerning prosecutorial function implicit in Judge Brown's concurring opinion in *United States v. Cox*, 342 F.2d 167 (5th Cir.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) where he states at 182:

 . . . the practical operation of the prosecutorial function makes imperative the

need for executive determination. The familiar example is the deliberate choice between those to be prosecuted and those who, often equally guilty, are named as co-conspirators but not as defendants, or others not named who are used as star government witnesses. It is the job of the prosecutor to do the prosecuting and the selecting of government wit-

the appropriate prosecutorial decision concerning whom to prosecute once an indictment has been obtained, or whom to seek the indictment against before the grand jury. What is at issue is an attempt to use the grand jury indictment to "fill out" the case against named defendants by attributing unlawful activity to those described by name in the indictment as compatriots in crime.

There is no place in a criminal indictment for mention of a person accused of crime who is not *formally* accused of that crime by being indicted. The grand jury's task, in the exercise of its dual role, is to determine whether there is sufficient evidence against a specific individual charged with a specific crime to justify a trial. *See, generally,* Note, The Grand Jury as an investigatory body, 74 Harvard L.Rev. 590 (Jan. 1961). *See,* Charge to Grand Jury, Appendix A. If the grand jury finds such evidence, it should indict the individual or, for whatever reason, refuse to honor the prosecutor's request even in light of proof of probable cause. If, however, there is insufficient evidence for a finding of probable cause, the grand jury *"remains silent. Once having determined that the evidence is insufficient, its function ends." Application of United Electrical, Radio & Machine Workers of America,* 111 F.Supp. 858, 864 (S.D.N.Y.1953). [Emphasis added] Thus, whether the Federal Grand Jury for the Southern District of West Virginia failed to indict Jordan because (a) there was insufficient evidence to merit a finding of probable cause that he had committed a crime, (b) the prosecutor didn't ask for an indict-

ment[4] and the grand jury did not independently choose to vote one or (c) the grand jury for some other reason did not wish to indict Jordan,[5] its only course of action was to *remain silent* as to Jordan. Orfield, The Federal Grand Jury, 22 F.R.D. 343, 446–447 (1958).

There can be little doubt that the naming of persons as unindicted co-conspirators is a "calumniation of private citizens." Boudin, The Grand Jury, Georgetown L.J. 1, 19 (Oct. 1972). It is in direct contradiction to the purpose and protections of the normal indictment system, in which "charges against an individual . . . being considered need not be made known until it has been determined that there are grounds to hold him to answer." Memorandum on the Grand Jury, prepared by the Office of Policy and Planning, U. S. Department of Justice, for the House Judiciary Committee, Subcommittee on Immigration, Citizenship & International Law, 6/9/76, page 21. Having found that the action of this Grand Jury was *ultra vires* as to its powers regarding indictments and was in contradiction of the charge it had been given, the question remains whether the mention of Jordan should be considered to be a form of "report" or "presentment" of the Grand Jury, which grand juries on the state level may issue by virtue of statute and which federal grand juries perhaps may issue when couched in proper form.[6]

After a somewhat uncertain treatment in the courts,[7] the question has been resolved in favor of the power of a grand jury to issue presentments or reports of investigations which do not result in

nesses. It is not his job to do the indicting. See also *In re Egan,* 450 F.2d 199, 200 (3 Cir.), *aff'd sub. nomine, Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

4. Some examples of the reasons or tactics that may be involved are mentioned in *United States v. Briggs, supra,* at 804–5.

5. One federal district court has described this form of [grand] jury nullification as follows:
Under their criminal responsibilities, grand juries perform both functions of investigation and indictment . . . In performing these criminal functions the grand jury im-

ports the common sense and decency of ordinary citizens into the criminal justice system, providing a buffer against possible prosecutorial excesses. [Footnote omitted.]
*Quadra v. Superior Court of City and County of San Francisco,* 403 F.Supp. 486 (N.D.Cal.1975).

6. This case does not involve special grand jury reports issued pursuant to 18 U.S.C. § 3333.

7. *See,* Kuh, The Grand Jury "Presentment". Foul Blow or Fair Play? 55 Harvard L.Rev. 1103 (1955).

indictments. *Application of Johnson*, 484 F.2d 791 (7th Cir. 1973); *In Re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974); *In Re Grand Jury Proceedings*, 479 F.2d 458 (5th Cir. 1973); *In re Presentment of Special Grand Jury Impaneled January 1969*, 315 F.Supp. 662 (D.Md.1970); *United States v. Cox, supra*. However, it is still true that these reports or presentments must be of a general nature "touching on conditions in the community"; they *cannot* be examples of the grand jury's accusing individuals of criminal misconduct through "publicized inferences of guilt". *Application of United Electrical, Radio & Machine Workers, supra* at 869. Once again, this is because the grand jury's plenary power to investigate, and its unchecked opportunity to protect both the guilty and the non-guilty by refusal to vote an indictment, are necessarily broad but the mechanism for indicating conclusions about criminality is a narrow one. This is the historical design of the federal criminal system of which the grand jury forms a part.

> But when [the purely inquisitorial] role goes beyond inquiry and report and becomes accusatorial, no aura of traditional or constitutional sanctity surrounds the grand jury. The Grand Jury earned its place in the Bill of Rights by its shield, not by its sword.

*United States v. Cox, supra*, at 186 [concurring opinion of Wisdom, J.] In *In re Presentment of Special Grand Jury, supra*, at 672, Judge Thomsen quoted from an article written by Judge Kaufman of the Second Circuit which read in part:

> [A] person investigated but not indicted . . . will never have the opportunity to rebut the charges made against him, if the secrecy has been lifted, in any forum comparable to a courtroom . . . But revelation of these charges would nevertheless deal a blow to an innocent reputation . . . the knowledge that a grand jury was investigating may seriously harm the individual's good name . . .

The Court in that case found that the grand jury had the power to issue its present-ment/report to the Court and it then lay *with the Court* whether any or all of the matters reviewed in the report should be disclosed to the public. The Court there permitted disclosure while specifically noting *none of the persons were charged with any crime in the report. Id.* at 679. To a similar effect is *In Re Report and Recommendation of June 5, 1972 Grand Jury, supra*, the Nixon Grand Jury case, where the power of the grand jury to issue reports was upheld because the report was not an indictment and the President would not be "left without a forum in which to adjudicate any charges against him", and because the Report suffered from no "objectionable qualities" because it drew no "accusatory conclusions" and was not a "substitute for indictments where indictments might properly issue". *Id.* at 1226–7. *Application of Jordan, supra*, places a similar heavy reliance on the fact that the report in question did not accuse anyone of criminal conduct.

█ The inescapable conclusion is that, even labelled as a "report", the document naming petitioner Jordan as a co-conspirator in described criminal activity was an improper exercise of the grand jury function.

█ Although this Court is prohibited from interfering unduly with the "powers of the grand jury and the proper functions of government counsel" during the investigatory stage of the grand jury's work, *United States v. U.S. District Court for the Southern District of West Virginia and the Honorable Ben Moore*, 238 F.2d 713 (4th Cir.), *cert. denied*, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957), there is no question but that the grand jury is within the control of the courts. *In re Grand Jury Subpoena to Central States, etc.*, 225 F.Supp. 923 (N.D.Ill.1964). A grand jury is "subject to the supervision of a judge" who should exercise his powers when appropriate. *United States v. Doulin*, 538 F.2d 466 (2d Cir.) *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). In the frequently quoted language of Judge Weinfeld's

opinion in *Application of United Electrical, Radio and Machine Workers of America, supra* at 869:

> The public, as well as petitioners, has an interest in the proper conduct of the Grand Jury—an interest the Court should protect. The public ought to be secure in the knowledge that one of its representative institutions does not exceed its powers and does not accuse without evidence sufficient to warrant indictment. And, finally, the public interest demands that the Court's processes be not used to defeat that fundamental fairness which must mark all judicial proceedings.

As the Supreme Court reiterated in its decision in *United States v. Dioniso*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the purpose of the Fifth Amendment guarantee that no individual may be charged in federal felony cases except by indictment or presentment of a grand jury was to provide protection both to those who would be "held to answer", *i. e.* prosecuted, and those who are not "held to answer". The Grand Jury's "mission is to clear the innocent, no less than to bring to trial those who may be guilty", *id.* at 16, 93 S.Ct. at 773, and it is within the power of the federal courts to make certain the grand jury does:

> serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor.

*Id.*, at 17, 93 S.Ct. at 773, when the *accusatory* function of the grand jury is at issue.

In holding that Jordan is entitled to expungement of his name from the indictment and subsequent documents because the Grand Jury acted outside its power, this Court does not ignore his claim that he has been deprived of his constitutional rights under the Due Process clause of the Fifth Amendment. The petitioner has argued that the action of the Grand Jury and the United States Attorney impinges upon the interest he enjoys in his good name and

reputation which is inalterably affected by being described as a co-conspirator in criminal activities with named defendants without any provision made for him to be heard by, or to present or cross-examine witnesses before the Grand Jury which so labelled him or any petit jury trying the named defendants.[7a]

Until the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the concept of an individual's due process rights in his reputation as one form of "liberty" appeared to be well established in the case law. Numerous Supreme Court opinions have spoken of the right to a hearing to "clear one's name" when accused of improper conduct. Among the early cases were *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and the more recent employment dismissal cases such as *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). While all of these cases took note of the predictable economic repercussions that might attend the stigma of an individual, none made the loss or foreclosure of employment the sole, pivotal factor in the determination of relief.

In *Paul v. Davis, supra*, the Supreme Court held that there was no cause of action stated under 42 U.S.C. § 1983 and the Fourteenth Amendment by an individual who had been arrested but not convicted of a shoplifting charge and whose photograph and name were subsequently circulated by the police chief to local merchants in a flyer describing "active shoplifters". After a lengthy discussion, the Court stated:

> Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been

---

**7a.** It must be noted that this is not an attempt to expunge the name of one whose name appears in the indictment as a conspirator as the result of a plea agreement or an agreement by the Government not to prosecute. Obviously such a person has waived the rights which are preserved here.

altered as a result of petitioner's actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.

*Id.* at 712, 96 S.Ct. at 1166. Although Justice Brennan, in a dissenting opinion, voiced his concern that the Court had by its decision eliminated due process protection of reputation under the Constitution, it seems clear that the "interest in reputation asserted in [that] case . . . against state deprivation without due process of law" was the primary focus of the Supreme Court's attention and that the case is distinguishable on several grounds from the one at bar.[8]

In *Paul v. Davis* the plaintiff had sought damages and declaratory and injunctive relief under the provisions of 42 U.S.C. § 1983. There was no question concerning the arrest of the plaintiff; the arrest and the *probable cause to support it* was never challenged by the plaintiff. At the time of the circulation of the flyer, the charges against him had been dropped, but with leave of a court to reinstate them. (After the circulation of the flyer, the judge entered a final dismissal of the charges.) Further, the Supreme Court pointed out that it was "not disputed that petitioners' actions [police chiefs'] were a part of their official conduct". *Paul v. Davis, supra,* at 697, n. 2, 96 S.Ct. at 1158. The Court described the plaintiff's claim as a "classi-

cal" one in defamation, "actionable in the courts of virtually every state". It was that claim, otherwise actionable and good only under state law, which the Supreme Court held was not intended to be encompassed, standing alone, within the purposes of Congress's enactment of § 1983 in its original form as the Civil Rights Act of 1867 and thus within the Fourteenth Amendment. As the Court stated:

> We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent.

*Id.,* at 699, 96 S.Ct. at 1159. The Supreme Court indicated, at page 698, 96 S.Ct. at page 1159, its fears that permitting a potential cause of action to lie with every person arrested under state law would result in an intolerable flood of litigation and resulting impediment to legitimate police activity. The related concern of the Court about the problems of federalism is evident in the reference to *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) and the language of that case indicating that the Fourteenth Amendment was not designed to empower Congress to "alter the basic relations between the States and the national government". The Court rejects the assertion of the plaintiff in *Paul v. Davis*:

> that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor . . . [S]uch a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the "constitutional shoals" that confront any attempt to derive from congressional civil rights statutes a body of general federal tort

---

**8.** The Supreme Court in a later decision, *Bishop v. Wood,* 426 U.S. 341, 348 n. 12, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), suggests than an

examination of the effects of public disclosure of reputation-damaging accusations has not been foreclosed.

law, *Griffin v. Breckenridge*, 403 U.S. 88, 101–102, [91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338, 347–48] (1971); *a fortiori* the procedural guarantees of the Due Process Clause cannot be the source for such law. *Paul v. Davis, supra,* at 701, 96 S.Ct. at 1160. Finally, as is indicated in the language from *Paul v. Davis* at 712, 96 S.Ct. 1155, quoted earlier, the Supreme Court found that there was no deprivation of a "liberty" interest protected by *federal* law asserted by the plaintiff and no portion of the Constitution or its Amendments, other than the Fourteenth Amendment, which could serve as the source of such an interest.

▮▮▮▮ The petition before this Court is purely equitable in nature, involves no request for damages and is based squarely upon federal law concerning federal juries and upon the Fifth Amendment clauses which relate to the grand jury and to due process. It is firmly established in the case law that the portion of the Fifth Amendment which concerns indictments or presentments is directed toward federal criminal procedure and attendant constitutional guarantees and does not affect state criminal law. *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420 (3rd Cir. 1975); *Morford v. Hocker,* 394 F.2d 169, *cert. denied,* 392 U.S. 944, 88 S.Ct. 2329, 20 L.Ed.2d 1406, *rehearing denied,* 392 U.S. 900, 89 S.Ct. 78, 21 L.Ed.2d 194 (1968). While the States are free to bring initial accusations against alleged criminals in a manner and form they may devise, the Fifth Amendment of the Constitution has adopted the grand jury as it existed at common law, making the institution and its powers "a part of the fundamental law of the United States for the prosecution of crime". *In re April 1956 Term Grand Jury,* 239 F.2d 263, *cert. denied, Shotwell Manufacturing Co. v. U.S.,* 352 U.S. 998, 77 S.Ct. 552, 1 L.Ed.2d 544 (1956). There are, therefore, none of the concerns of federalism, or the application of state law claims through the Fourteenth Amendment and § 1983 of the Civil Rights Act, at issue in Jordan's petition. Although the Fourteenth Amendment may not *ex proprio vigore* extend to individuals a right to be free of injury under state tort law, the Fifth Amendment Due Process Clause can, and does, extend to all citizens the guarantee of a right to be free of injury secured by the federal Constitution in the indictment clause of the Fifth Amendment and by other federal laws. The type of potential injury involved in misuse and omission of the federal indictment procedure has been discussed earlier in this opinion. The protections of the indictment procedure and the concept of the indictment as a shield for those whom a federal grand jury does not elect to accuse on probable cause and who therefore need not "stand to answer" by public disclosure of the accusations of the grand jury have been documented in the federal case law. There is no reason to believe that it would come as a "great surprise to those who drafted and shepherded the adoption" of the Fifth Amendment to learn that it worked the result of holding the federal grand jury to the proper exercise of its accusatorial powers.

▮▮▮▮ While the arrest of the plaintiff in *Paul v. Davis* was not the subject of constitutional challenge and the question of the existence of probable cause to make an official accusation was not raised, this Court perceives the action of the Federal Grand Jury in naming but not indicting Jordan as constitutionally flawed because the accusatory action was not one indicating that it was based upon a determination there was probable cause to believe Jordan had committed a criminal act. As stated, the only legitimate means by which the Federal Grand Jury could publicly indicate such a finding of probable cause was by the action of indicting Jordan. Naming him as an unindicted co-conspirator thus deprived him of his due process right to be permitted the protection of the federal indictment process as it is secured to him under the Fifth Amendment and the Federal Rules of Criminal Procedure.

▮▮▮▮ The Court also notes that this case differs from *Paul v. Davis* in that there is available to the petitioner no other

form or forum by which he may challenge the actions which the federal grand jury took against him. There is no claim in defamation which can be lodged against the Federal Grand Jury, which is completely and totally immune to suit when it speaks officially through the medium of the indictment.[9] *United States v. Briggs, supra; Restatement, Second, of Torts* § 589 (Tent. Draft 1974). There is also no forum in which the unindicted co-conspirator may directly challenge the validity of the grand jury's accusation, since there is no right to appear to argue before the grand jury and no right to intervene in the criminal trial of those who are named as defendants. *See, generally,* the discussion in *United States v. Briggs, supra* at 804.[10]

 Having been named as an unindicted co-conspirator petitioner was denied his due process right to be treated by the Federal Grand Jury in the manner which is contemplated by the guarantee of legitimate grand jury protection in federal criminal matters, both of which entitlements are embodied in the Fifth Amendment.[11]

Accordingly, it is this 12th day of October, 1977 by the United States District Court for the Southern District of West Virginia, ORDERED:

That the name of George B. Jordan, Jr., be expunged from the indictment and any and all subsequent official documents forming a part of the official record of case Y–75–189CH.

**9.** This does not foreclose a claim against grand jury members who might defame an individual by discussing grand jury investigations in private conversation with outside third parties. *United States v. Smyth, supra.*

**10.** The Court in *United States v. Briggs, supra* at 804 n. 16 suggests that a cooperating individual might appear before the grand jury at the government's request and on the basis of self-incriminating testimony be named as an unindicted co-conspirator, a circumstance which did not occur in that case, where the petitioners had refused to testify. In the instant case, Jordan did testify, but not as a cooperating witness, not with a grant of immunity and not in what *Briggs* obviously suggests as a *deliberately* self-incriminating manner. It is no less offensive to due process concepts to

## APPENDIX A

### CHARGE TO THE GRAND JURY

THE COURT: Before _____, the Clerk of Court, administers the oath to you ladies and gentlemen, under which you will make certain responses to questions as to your qualifications for grand jury service, I want to make this observation, and that is that while an oath is administered it is not a prerequisite for your service on this grand jury that you take an oath that you believe in God or an almighty providence.

You may be an athiest, an agnostic, you can be anything else and you will still be qualified to serve as grand jurors of this Court if you meet the statutory qualifications of the United States Code.

Is there any member of this grand jury who would prefer not to take an oath? You need not be embarrassed to make that known if you have any feelings at all, because as I say, that is not a prerequisite under the laws enunciated by the highest court of this land for service either on a grand or petit jury.

All right, Mr. Clerk, it appears no one has any objections to taking an oath. (Qualifying oath given)

The Court is going to appoint _____ as foreman of the grand jury and _____ as deputy foreman. Will you administer the oath, Mr. Clerk?

(Oath administered to foreman and deputy foreman, then to remainder of the grand jury.)

suggest that in fulfilling his obligation to testify before the grand jury, as all citizens must, Jordan sacrificed his due process right to be afforded the protections of the grand jury indictment process. Had Jordan been indicted and put to trial, his grand jury testimony might be used against him in appropriate circumstances. It cannot be used to label him as an unindicted co-conspirator.

**11.** The rights preserved herein are preserved for the unindicted co-conspirator alone. Thus, a defendant, properly indicted in an indictment which may name others as unindicted co-conspirators, has no standing to question that practice, no benefit accruing from it, and no basis for alleging prejudice attributed to it.

Before I charge the grand jury is there any challenge to the array or any challenge to any individual grand juror either by the government or by anyone else in the courtroom?

Ladies and gentlemen, you have much work to do at this particular grand jury session and I am not going to intrude upon your time by indulging in a long description about the antique origin of the grand jury, nor its historical and constitutional significance except to say this, that your duties as grand jurors have been pretty well delineated in the oath which you have just taken, and that is that you should inquire diligently and true presentment make of any matters coming to your attention as grand jurors which would require consideration and possible indictment for federal crimes committed in the Southern Judicial District of West Virginia.

The grand jury under federal law is comprised of not more than twenty-three members nor less than sixteen. The law requires, however, that regardless of the number of jurors who constitute your grand jury that twelve of your number must concur in any indictment in order that it be returned as a true bill. If less than twelve of your number concur in any proposed indictment, then you would return it "no true bill".

Your foreman, Mr. _____, will preside over your sessions, administer oaths to witnesses and sign any indictments returned by you as true bills. However, let me make this observation, that any grand juror has the right to inquire of any witness, ask any questions, do anything that you feel is necessary to satisfy you individually as a grand juror as to the merits or lack of merits of any presentment made to you.

The United States Attorney or his assistants will be present in the grand jury room to assist you and to advise you as to the law. You are to consider these presentments and you should indict if you find from the evidence presented to you, unopposed by any other evidence, that probable cause exists. If you find probable cause that a person should be put upon his or her trial upon any charge, then you should return an indictment as a true bill in such a case.

While the United States Attorney or his assistants will assist you and question witnesses, again let me say that any grand juror is entitled to question any witness who appears before you on any matter germane to your inquiry, but no person other than you as grand jurors should be present in the grand jury room at the time you vote on any indictment and, of course, it goes without saying that it would be something more than an impropriety if the United States Attorney or his assistants should seek to influence your vote in any way upon any indictment being considered by you.

You serve historically a twofold purpose as grand jurors. First of all you stand as a defense, you might say, between the Government of the United States and the citizens to see that no person is brought to trial upon a frivolous or ill-founded charge, but on the other hand you likewise serve as a constitutional instrumentality to see that the citizens of the United States are protected and that anyone who in your opinion under the evidence presented to you should be brought to trial should in that event be subject to an indictment.

You are not concerned with the ultimate innocence or guilt of a person who is charged with a crime because that issue would be tried by a petit jury of twelve men and women.

It goes without saying that in your service many matters will be disclosed to you. They should be kept confidential; they should be kept secret. You should not divulge anything that goes on in your grand jury room to anyone, nor under any circumstances except in response to the lawful process of a court. I cannot caution you too earnestly on this matter of secrecy because it would be a rather unfortunate thing if the proceedings before a grand jury were to become common gossip in the streets.

You being members of a federal grand jury are concerned only with federal crimes. State crimes fall exclusively within the jur-

isdiction of our state criminal courts. Crimes such as homicide, larceny and what not unless they have a federal implication or a federal flavor are not the subject of a federal grand jury's investigation.

On the other hand, many crimes which have their genesis in the violation of a state law or which constitute a state crime also become a federal crime under certain circumstances, such as an automobile which is the subject of larceny in the State of West Virginia. If that automobile is knowingly transported after it is stolen into another state in interstate commerce, then it becomes a violation of a federal law and is the concern of the federal government.

This is a very serious service that you have to perform. I think you will find it interesting. We certainly want to do everything we can to make you feel that the Court, the United States Attorney's office and the Marshal's office are here to cooperate with you to make your service fruitful, interesting and effective, and if at any time during your service you desire the advice of the Court on any matter, you simply have to make that known and I will be most happy to give you the benefit of my advice if such might be appropriate.

When you have completed your investigations, you should return into this courtroom and your foreman should present your indictments to the Clerk of this Court, who will read the return on each indictment in order to verify its accuracy.

(Here add any special matters which may require special attention by this Grand Jury.)

You may now retire to your room for the consideration of such matters as may be brought to your attention.