IN RE REPORT OF GRAND JURY
OF CARROLL COUNTY,
NOVEMBER TERM, 1976

[No. 1007, September Term, 1977.]

*Decided June 8, 1978.*

The cause was argued before THOMPSON, DAVIDSON and MASON, JJ.

*Jacob Yosef Miliman* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Thomas E. Hickman, State's Attorney for Carroll County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we are asked to determine whether a grand jury has the power to report publicly specific instances of non-criminal misconduct of public officials. We determine that they do not and shall reverse.

The grand jury impaneled in the Circuit Court for Carroll County for its 1976 November Term included the following in its report:

"The Grand Jury has heard testimony concerning an investigation of allegations of impropriety on the part of employees of the Board of Education. Three employees were indicted by our predecessor and each has entered a plea of guilty to a felony prior to our meeting. The State's Attorney has apprised us of the fact that there were many rumors and allegations made prior to and during this investigation which was commenced at the request of the Board of Education. It appears to us now that what occurred was a remarkable incidence of mismanagement in the administration of Dr. Furno, Assistant Superintendent for Administration during the period 1972 to 1976. As examples we cite the following:

"In 1974 it came to light that a high school gymnasium floor and an elementary school gymnasium floor were in need of repair. The testimony we have heard indicates that these two floors could have been repaired at a combined cost of less than $3000.00. Dr. Furno, in spite of being informed of this fact by those in the employ of the School Board supervising school construction, ordered these floors replaced rather than repaired. He went about having this done contrary to bidding procedures established by the School Board. The final cost of this needless expense was a total of $37,823.10, of the money of the taxpayers of this County.

"During the 1973-1975 school years when an 'austerity' program was in effect in the school system due to a shortage of funds, teachers were short of instructional materials in the school system. The financial records of the Board of Education during this same period of time reflect that Dr. Furno purchased several hundred dollars of books for his personal use, paid for by the Board of Education. If these

books concerned the areas of school administration in which he was involved this would be understandable. They did not. Their titles are self explanatory and we recount several here: *I Fought With Geronimo; Isleta Paintings; A Selection of Some of the Most Interesting Narratives of Outrages Committed by the Indians in their Wars with the White People; The Law in America and Great Crimes and Trials; Patton; Authentic Story of the Totem Pole — Monuments in Cedar; Minerals Yearbook, Volume III.*

"In September of 1975, the Director of Finance of the Board of Education called to the attention of Dr. Furno the fact that approximately $80,000.00 of School Funds provided by the State and Federal Governments had been misallocated by the County into areas other than food funds, the area for which they were specifically provided. Use of these funds for anything other than food for school children jeopardized hundreds of thousands of dollars in State and Federal funds allocated to Carroll County and the Board of Education. The remedy was a simple change in the records of allocations, with plenty of time for change since the school year had just begun. Dr. Furno advised that he would take care of the situation. More than six months later an investigator of the State's Attorney found these funds, still misallocated. Fortunately sufficient funds and time remained in the fiscal year to make the adjustment without the forfeiture or penalties due to mismanagement.

"Although there were other problems existant the above is a sufficient illustration." The report concluded by recommending eight changes in the financial procedures of the Board of Education.

Dr. Furno filed a petition in the Circuit Court for Carroll County requesting that all references to him be expunged from the report. The court refused the request, ruling that the report was proper, based on *In re Presentment of Special Grand Jury Impaneled January, 1969,* 315 F. Supp. 662 (D. Md. 1970). In making its ruling the court declined to follow the decision of the Court of Appeals in *In re Report of Grand Jury,* 152 Md. 616, 137 A. 370 (1927), concluding it would no longer be followed.

In *In re Report of Grand Jury, supra,* a case strikingly similar to the present case, the Court expunged specific references to public officials concerning their inept handling of the construction of a high school. After reviewing the history of the grand jury and its powers the Court delineated its function, stating:

"The function of the grand jury is to investigate violations of the criminal law, and in performing this function their inquisitorial powers are unlimited. If, however, having exercised these powers in any given case, there is lacking sufficient evidence to indict, their duty in that particular case ceases, and, under their oath, nothing transpiring within their body should be made public. It is apparent that this should be so, for the protection of the good name and reputation of the people, otherwise a condition would exist which the establishment and zealous maintenance of the grand jury was intended to prevent, namely, that of having an individual publicly charged with misconduct without probable cause. If there is sufficient evidence of the commission of a crime, it is the duty of the grand jury to indict, that is, to take such action as will bring the party to trial; if there is not, the citizens are and should be protected against accusations by that body which do not mount up to a criminal offense. The custom and practice, hereinbefore referred to, of grand juries in this state, in their reports, commenting on or condemning general conditions which they believe to exist, and pointing out what in their judgment is the remedy, can do no harm, and in many cases substantial good to the community may follow, for the reason that recommendations of the grand jury carry with them great weight in the mind of the public; but when they go beyond this, and condemn the acts and impugn the motives of public officials or private citizens, the law and sound public policy forbid. The report here under consideration exceeds the legitimate powers of the grand jury and

is calculated to injure the reputation of the individuals named or inferentially included therein. It charges the commission of no crime, and its only effect can be to arraign certain public officials as having been guilty of real or fancied misconduct in the administration of their public duties." *Id.* at 631-632.

The approach taken in *In re Report of Grand Jury* concerning the power to report on non-criminal conduct of public officials has been criticized as being based on an unduly restrictive limitation of the common law powers of grand juries. *See* Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play?*, 55 Col. L. Rev. 1103 (1955). Other courts considering the question have concluded that the powers of the grand jury include the power to issue presentments or reports on the actions of public officials even though no indictment is returned and the actions do not constitute a crime. *See United States v. Cox,* 342 F. 2d 167, 186-189 (5th Cir.) (Wisdom J. concurring) *cert. denied,* 381 U. S. 935, 85 S. Ct. 1767, 14 L.Ed.2d 700 (1965); *In re Jordan,* 439 F. Supp. 199, 204-205 (S.D. W. Va. 1977); *In re Presentment of Special Grand Jury Impaneled January 1969, supra; In re Presentment by Camden County Grand Jury,* 10 N. J. 23, 89 A. 2d 416 (1952). *See, The Grand Jury as an Investigating Body,* 74 Harv. L. Rev. 590 (1961). Under these authorities, however, a trial court would not automatically release all such reports to the public. Rather, once such a report is made the court has the responsibility of determining whether all of the matters it contains should be disclosed. *In re Jordan, supra* at 205. In so doing:

"The Court is the agency which must weigh in each case the various interests involved, including the right of the public to know and the rights of the persons mentioned in the presentment, whether they are charged or not. The Court should regulate the amount of disclosure, to be sure that it is no greater than is required by the public 'interest in knowing' when weighed against the rights of the persons

mentioned in the presentment." *In re Presentment of Special Grand Jury Impaneled January, 1969, supra* at 678.

Despite the State's request that we adopt the rationale of these latter cases, we cannot ignore the rule laid down in *In re Report of Grand Jury, supra.* We think this decision strikes the proper balance between the rights of the public and the individual. By permitting the grand jury to make recommendations designed to correct undesirable situations, the public's right to be informed is vindicated. At the same time, the prohibition of specific reference to public officials by name or office protects them from being publicly condemned without an effective means of reply. We note that a number of other jurisdictions that have considered the question in recent years continue to follow an approach similar to that adopted by the Court of Appeals of Maryland. *See Harris v. Edmonds,* 119 Ga. App. 305, 166 S.E.2d 909 (1969); *In re Brevard County Grand Jury Interim Report,* 249 So. 2d 709 (Fla. App. 1971); *In re Davis,* 257 So. 2d 884 (Miss. 1972); *In re Report of Grand Jury,* 123 Utah 458, 260 P. 2d 521 (1953); *See also Hammond v. Brown,* 323 F. Supp. 326, 343-346 (N.D. Ohio), *aff'd.* 450 F. 2d 480 (6th Cir. 1971).

Unfortunately, the relief we grant appellant is a hollow victory as the grand jury report has already been published in the local newspapers.[1] In light of the decision of the Court of Appeals in *In re Grand Jury Report, supra,* the lower court should not have accepted and released the report containing appellant's name but should have directed the grand jury to amend its report in accordance with that opinion.

> *Order reversed.*
> *Quoted portion of grand jury report stricken.*
> *Costs to be paid by Carroll County.*

---

1. We have republished the damaging portions of the report to illustrate the type of report a trial court should refuse to accept. We are advised that Dr. Furno has already lost his job and is working in another position; thus further damage from the publications seems unlikely to occur.