

John E. Britton and John J. Stroh, Jr., Erie, Pa., for Urick Property.

Marshall H. Harris, Regional Sol., Dept. of Labor, Philadelphia, Pa., John P. Garhart, Asst. U. S. Atty., Pittsburgh, Pa., for OSHA.

**In the Matter of Establishment Inspection of URICK PROPERTY.**

**Civ. A. No. 79–88 Erie.**

United States District Court, W. D. Pennsylvania.

July 11, 1979.

## OPINION

WEBER, Chief Judge.

We have a Motion to Quash a warrant issued by the United States Magistrate for a general OSHA inspection of a foundry. The Occupational Safety and Health Act of 1970 is a very extensive law. It is buttressed by detailed administrative regula-

tions and an extensive judicial gloss. Such legislation establishes a broad policy of safety and health protection for employees in industry. Nobody can be against that.

The Act, however, omitted any protection for the industrial plant against unconstitutional entry and search. This protection was required by the Supreme Court in 1978, *Marshall, Secretary of Labor et al. v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), but all the parameters of such entry and search have not been clearly defined, leaving the inferior courts a considerable area in which to attempt to define these. We have examined the existing case law as it is so completely and currently reported by specialized topical publishers and find there an embarrassment of riches from the District Courts on every conceivable objection that can be raised to OSHA inspections. Even in our own Circuit there are disparities between the Districts and even within Districts. See *Whittaker Corp. v. OSHA,* M.D.Pa., March 7, 1978, 6 OSHC 1492, and *Marshall v. Silberline Mfg. Co.,* M.D.Pa., Case No. Misc. 77–24, Oct. 20, 1977, unreported. In this District, *Dravo Corp. v. Marshall,* 5 OSHC 2057 (W.D.Pa.1977), affd. 578 F.2d 1373 (3d Cir. 1978), upheld a Magistrate's warrant for general inspection warrant based upon multiple complaints of specific violations on the grounds that general inspections are authorized by the Act. No question of a general inspection based on the Secretary's Foundry Inspection Program was raised in that case which came up prior to the F.I.P. instituted in 1977. Also in *Marshall v. T. Bruce Sales,* (Civil Action No. 79–309, W.D.Pa., May 25, 1979), the court enforced the warrant for a general inspection in a contempt proceeding where the issue was the reasonable cause basis of the warrant on a charge of a specific violation.

Nor are we now concerned with the authority of the Magistrate to issue such warrant the propriety of an ex parte warrant both these objections have where, and decided in the believe that the majority eld the Magistrate's rrants as implied

under the general powers of the Magistrates and the parallel of the specific powers of the Magistrates to issue search warrants, or specifically conferred on the Magistrates by local rule. Similarly, we believe *Barlow* to read that an ex parte application for the warrant is sufficient despite the conclusion of Judge Pollack that the Secretary had become entangled in the web of his own Regulations, *Cerro Metal Products v. Marshall,* (E.D.Pa.1979) 467 F.Supp. 869.

The problem of entry and search arises in the area of general or comprehensive inspections, directed by the Act in furtherance of the legislative policy without regard to probable cause in the traditional sense. 29 U.S.C. § 657(a).

General warrants of this kind were of acute concern at the time of the adoption of the Constitution. Being omitted in the main text, the adoption of the Constitution depended upon the inclusion of specific limitation in the Bill of Rights, including the specific safeguards of the Fourth Amendment. Even an amateur historian recalls that the Writs of Assistance which so angered the American colonists that they took up arms, were general search warrants without probable cause.

The Supreme Court in *Barlow's, Inc.,* supra, in deciding that some compulsory process issued by a disinterested magistrate is required before a federal agent could enter a place of business to conduct a search, seemed to apply two standards for the issuance of a warrant or other compulsory process. The court spoke in the language of *ex parte* warrants, but then recited that probable cause in the criminal law sense was not required. *Marshall v. Barlow's, Inc.,* 436 U.S. at 320, 98 S.Ct. 1816. We believe that the double standard was meant to apply to two different types of warrants; a specific but limited inspection, and a general inspection, and that the specific inspection required a showing of probable cause in the nature of an employee complaint of an existing violation. The present applicants have no objection to an inspection on a specific complaint, with or

without warrant. It is the basis for the general inspection that they attack here.

The general inspection is another and distinctly different matter. It has been designated by Mr. Justice Clark as the "new-fangled" warrant (*See v. Seattle,* 387 U.S. 541, 547, 87 S.Ct. 1737, 18 L.Ed.2d 943), and the terminology is continued in the dissent in *Barlow,* 436 U.S. at 328, 98 S.Ct. 1816. The Court has required showing that:

" 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' *Camara v. Municipal Court,* 387 U.S. [523] at 538, 87 S.Ct. [1727], at 1736, 18 L.Ed.2d 930. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment Rights." *Marshall v. Barlow's, Inc.,* 436 U.S. at 320–21, 98 S.Ct. at 1824–1825.

The Application here is voluminous. It contains a six page general statement, plus numerous appendices showing the administrative adoption of the N.E.P. (National Emphasis Program) and the F.I.P. (Foundry Inspection Program) the selection of 300 foundries for inspection nationwide, the assignment of one general inspection to the Erie area consisting of 17 Pennsylvania counties, as well as a history of prior citations of the Respondent's facility, two old and one current employee reports of violations in particular areas, and the fact that no general inspection of this facility had been made in the past year.

■ We believe that the Application although lengthy, has been admirable as far as it goes. We certainly defer to the expertise of the Secretary in selecting a hazardous industry for its program, and in making a nationwide allocation of facilities to be inspected. But when we get to the one inspection allotted to the Erie Regional Office, we can find no recital of a rational basis for the selection of the Urick Foundry in the 17 county area in this region. We are told in the Application that Urick has not had a general inspection in the last year but we are not told how many other foundries also fit this category. We are told of a history of past citations but we are not told if this history differs markedly from that of other foundries. We are told of one current and two older violation complaints, but we are not told whether these complaints dictated the choice of Urick Foundry under the Foundry Inspection Program. It may well be that the history of this facility makes grounds for a reasonable exercise of discretion for the area administrator to single it out for the general inspection. If this would appear we believe that the warrant would properly issue under the relaxed probable cause criteria mentioned by the Supreme Court. But even this is not necessary; the court has held that an inspection must be made "pursuant to an administrative plan containing specific neutral criteria." *Marshall v. Barlow's, Inc.,* 436 U.S. at p. 323, 98 S.Ct. at 1826. Given the benefit of the reasonableness of the program in carrying out the legislative policy, a choice of the local facility by lot would satisfy this requirement.

We believe, therefore, that the Secretary may proceed, either by showing of some specific criteria supporting an exercise of discretion by the Regional Administrator, or by the showing of strictly neutral criteria such as selection by lot. We were informed at the hearing that there were 11 foundries in the city where Urick is located, we do not know how many are located in the 17 county region covered by the office to which the one inspection is allotted by the Secretary, but the Application does not state why Urick was selected as the local participant in the Foundry Inspection Program.

While the regional OSHA officers were present at the argument on the Motion to Quash the Warrant, they were not heard because the sole question was the sufficiency of the Application.

Not being informed as to either probable cause for a general inspection, or as to the application of neutral criteria in the selection of Urick Foundry, the Magistrate had no basis upon which to issue the warrant, and the Motion to Quash the warrant will be granted.