In the Matter of Establishment Inspection of: CHICAGO ALUMINUM CASTINGS COMPANY, INC., a corporation.

CHICAGO ALUMINUM CASTINGS CO., Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, and Robert L. Caldwell, Safety and Health Officer, Defendant.

No. 81 C 3232.

United States District Court, N. D. Illinois, E. D.

Sept. 22, 1981.

Christopher W. Katzenbach, Paul J. Cherner, Janet E. Goldberg, Friedman & Koven, Chicago, Ill., for plaintiff.

Herman Grant, Regional Sol., U. S. Dept. of Labor, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

MARSHALL, District Judge.

This action was commenced on June 9, 1981 by the complaint of Chicago Aluminum Castings Co. for a declaratory judgment, injunction and other relief against Raymond J. Donovan, Secretary of Labor, and Robert L. Caldwell, Compliance Officer, United States Occupational Safety and Health Administration. Plaintiff immediately implemented its complaint by a motion to quash an administrative search warrant which had been issued to defendant Caldwell at his request by the Honorable Carl Sussman, Magistrate of this court. In response to that motion, defendants Donovan and Caldwell moved for an order of civil contempt against plaintiff and two of plaintiff's employees upon the ground that they had unlawfully failed to obey the administrative search warrant issued by the Magistrate which had been duly served upon them.

Counsel for the parties have performed expeditiously and efficiently. The case has been well briefed and is ready for decision. The facts are essentially undisputed.

On February 9, 1981, defendant Caldwell went to the premises of plaintiff for the purpose of conducting an inspection in order to ascertain whether plaintiff was in compliance with the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. Plaintiff had been selected for inspection in accordance with OSHA Instruction CPL 2.25A, Scheduling System for Programmed Inspections. CPL 2.25A prescribes a method for establishing priorities among industries for inspection based upon the injury rate and the number of lost work days in a particular industry.

Caldwell met with plaintiff's president, Harold H. Horton, and presented his credentials stating that he was there to conduct a safety inspection. Horton responded that Caldwell would need a warrant before he would be permitted to enter the plant. Horton gave Caldwell a "statement of policy" which Caldwell acknowledged and signed. In essence, the statement of policy was to the effect that plaintiff desired to exercise its Fourth Amendment rights as articulated by the Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The statement went on to say that plaintiff did "not believe that probable cause exists for an OSHA inspection of [plaintiff's] property. In the event that the Secretary of Labor believes otherwise and decides to make application for an inspection warrant, [plaintiff] hereby requests that it be given notice of such application so it can have an opportunity to oppose the same."

Caldwell telephoned his supervisor and informed him of the denial of the entry and then left plaintiff's premises.

On June 5, 1981, without notice to plaintiff, Caldwell presented an application for an inspection warrant pursuant to § 8(a) of the Act to Magistrate Sussman. The application contained, inter alia, an explanation of the manner in which CPL 2.25A operates generally, and the manner in which plaintiff was specifically selected for inspection. In addition, a copy of CPL 2.25A was at-

tached to the application. The application recited:

"[Plaintiff's] specific workplace was chosen to be inspected in accordance with OSHA's Scheduling System for Programmed Inspections (OSHA Instruction CPL 2.25A), . . . as generally described in paragraph H of the Instruction, the initial selection of a particular category of employment (such as high hazard general industry, construction or maritime) is made in accordance with annual projections made at the OSHA area office level and reviewed at the Regional and National Office levels. Within a category of employment [,] establishments are randomly selected for inspection from an establishment list for that category and placed in an inspection 'cycle.' Within a cycle [,] establishments are scheduled for inspection so as to make efficient use of resources. With limited exceptions, all establishments in a cycle are inspected before a new cycle is begun.

"With respect to the present inspection which OSHA seeks to perform, the determination was first made, consistent with the area office's annual projections, to perform a programmed inspection in the high hazard general industry (safety) category. As set forth . . . in . . . the Instruction, scheduling for high hazard general industry (safety) is based on a statewide Industry Ranking Report which lists, by four-digit Standard Industrial Classification (SIC), all industries in the state (except construction and most maritime) which have a lost workday injury rate of 4.0 or higher and whose rate of lost workday injuries per establishment is 3.0 or higher. (The 4.0 lost workday injury rate figure is based on the Bureau of Labor Statistics estimate of the national average private sector lost workday injuries during 1978, the most recent year for which statistics have been compiled. The 3.0 lost workday injuries per establishment figure is well above the national private sector average of approximately 0.5).

"[Plaintiff] is believed to be engaged in the manufacture of castings and die cast-ings from aluminum and aluminum base alloys, and other related activities, SIC number 3361, which is included on the current Industry Ranking Report for the state of Illinois. The establishment in question appears on the establishment list for high hazard general industry (safety) prepared in accordance with . . . the scheduling instruction. Pursuant to [the instruction] [plaintiff's] establishment was selected from the establishment list, by means of a random number table, for inclusion in the inspection cycles for general industry (safety). The establishment was then scheduled for inspection . . .

"[Plaintiff's] establishment is the fourth to be assigned for inspection during the Second quarter of the fiscal year. There are 28 establishments with the SIC Number 3361. Six have been scheduled to be inspected during the second quarter. The three establishments above this establishment have been assigned for inspection. [Plaintiff's establishment] has not been previously inspected."

Upon consideration of the application which was made under oath, Magistrate Sussman issued the warrant.

On June 8, 1981, at approximately 9:00 a. m., Caldwell proceeded to plaintiff's premises to conduct the inspection. There he met plaintiff's office manager, Serge Puccini. He introduced himself to Puccini and stated that he was there to conduct a safety inspection pursuant to an inspection warrant, a copy of which he handed to Puccini. Puccini took the warrant and in turn delivered to Caldwell a notice of protest which he asked Caldwell to sign. Caldwell did so. The notice provided that, "since the warrant is facially in proper form, [plaintiff] believes it could be cited for contempt of court if it declined to allow the inspection to begin as stated on the warrant. [Plaintiff] therefore will allow the inspection under protest. By doing so, [plaintiff] waive[s] no right to challenge the validity of the inspection or the authorization for its conduct and specifically preserve[s] the right to do so should any OSHA enforcement proceeding be commenced against [plaintiff] based on

this inspection or should there be other reason to litigate this matter."

Caldwell proceeded to complete the initial OSHA forms. While he was doing so, Mr. Horton, plaintiff's president, telephoned and was informed by Puccini that an OSHA inspector was at the plant with a warrant. Horton then spoke to Caldwell on the telephone and asked as to the contents of the warrant. Caldwell began to read the warrant. When he had read about one-quarter of it, Horton interrupted and stated that there was no valid reason to inspect the premises. Caldwell stated that the premises had been selected for inspection on a random basis. Horton stated that he would like to check with his attorneys concerning the legality of the warrant. Caldwell's version of this is that Horton stated that Caldwell could not conduct the inspection until the attorneys reviewed the warrant. In any event, upon completion of the conversation, Caldwell contacted his office and then left the premises.[1]

Later that day, June 8, plaintiff's counsel telephoned OSHA's area office. The call was returned on June 9 by a safety supervisor. Plaintiff's counsel indicated concern about the warrant. He stated that he did not believe that OSHA had the right to conduct the inspection. He requested a copy of the warrant which was delivered to his office on the morning of June 9. He then requested a copy of the warrant application which OSHA declined to produce. He sought and was declined a copy of the application from Magistrate Sussman.

This action was promptly commenced on June 9. A motion to quash the warrant was served. Defendants' cross-motion for contempt was served, supported by a copy of the application.

■ Thus the only factual dispute is that relating to the precise contents of the telephone conversation on June 8 between Caldwell and Horton. In essence, Caldwell claims that Horton orally refused to permit the inspection while Horton claims that Caldwell acquiesced in Horton's request that he be permitted to consult counsel. It is undisputed that plaintiff's notice of protest unequivocally stated that plaintiff would "allow the inspection under protest" and there is no evidence that Horton or anyone else countermanded that authorization through any instructions to Puccini. On this record we would be hard-pressed to find that plaintiff contumaciously refused to abide by the terms of the warrant. Accordingly, defendants' motion for an order of civil contempt against Chicago Aluminum Castings Co., Serge Puccini and Harold Horton is denied.

We turn to the merits of plaintiff's complaint for declaratory judgment and motion to quash the warrant. The parties have agreed in open court on the record that we may treat the materials which have been presented to us as cross-motions for summary judgment, there being no dispute of fact with respect to the issuance and service of the warrant.

Plaintiff makes several contentions with respect to the warrant procedure. As we shall see, one of them has been decided in plaintiff's favor by Judge Roszkowski of this court in *Rockford Drop Forge Co. v. Ray Marshall, Secretary of Labor, etc.*, No. 80 C 144, Northern District of Illionis, Western Division. That action is now pending on appeal in the Court of Appeals for this circuit.

Plaintiff's threshold argument is that it was entitled to be served with a copy of the application for the warrant, together with the warrant, on June 8, 1981 when Caldwell appeared to perform the inspection. Plaintiff urges that only by this procedure is it safeguarded against an unlawful inspection and afforded the opportunity knowingly and intelligently to challenge the inspection.

---

1. According to Horton, Caldwell stated that it was all right with him if Horton checked with plaintiff's lawyers and asked Horton to get back to him within a few days to let him know what was decided. Horton claims that he replied he would get back to Horton as soon as possible after speaking to the lawyers.

■ We know of no authority which supports plaintiff's position and we are aware of no practice or procedure which would sustain or give credence to it. The application for a search warrant in any proceeding of which we are aware is presented in the first instance to the judicial officer in question, here Magistrate Sussman. The judicial officer reviews the application and if he or she is of the opinion that it shows probable cause for the issuance of the warrant, the warrant is issued. That is the holder of the warrant's authority to enter the premises in question. The terms of the warrant must be scrupulously followed. A return of the warrant must be made. But the respondent to the warrant, the owner, occupier or possessor of the *locus in quo* is not entitled under either the Fourth or Fifth Amendment or the common law to a copy of the application.

Plaintiff next contends that in all of the circumstances of this case, and particularly plaintiff's written request that it be notified, that it was improper under the Fourth and Fifth Amendments for Caldwell to proceed *ex parte* without notice to plaintiff before Magistrate Sussman. It is on this issue that plaintiff seemingly enjoys a supporting authority in *Rockford Drop Forge Co., supra.*

■ With all respect to our brother Roszkowski, we do not agree with the conclusion that he reached in *Rockford Forge.* The hearing on an application for a search warrant is not and never has been an adversary proceeding. The standard of proof is probable cause. There is no concept of *prima facie* case, burden of persuasion, or the right to challenge the credibility of the applicant's proof. The applicant represents to the issuing judicial officer under oath that he or she is possessed of certain information which, if true, gives rise for probable cause to believe that a search is justified. Remedies other than confrontation and cross-examination are available in the event the applicant knowingly falsifies before the judicial officer.

The judicial officer surveys the information on the assumption of its truth. He or she then decides whether that information gives rise to probable cause to authorize the search or inspection. If the judicial officer concludes in the affirmative, the warrant issues; if the officer concludes in the negative, the warrant is denied. And that is the end of it unless and until proceedings are brought either to enforce the warrant, as here, when the probable cause sufficiency of the evidence can be challenged, or in a proceeding in which the fruits of the search are used against the person whose privacy has been invaded by the search.

We do not share Judge Roszkowski's view that judicial economy will result from an adversary proceeding at the issuance stage. Indeed our experience is quite the contrary will be true. The party resisting the warrant will, in our system, seek review by the district court and perhaps thereafter by the court of appeals, and all of the time the search or inspection is delayed with the inherent risk that that which has been sought will not be there when a final adjudication is made upon the issuance of the warrant.

True, in this case, no appreciable harm would have come to OSHA had it notified plaintiff of its application for the warrant, in view of the fact that plaintiff was already aware of OSHA's desire to inspect plaintiff's premises. But that will not always be the case. Nothing mandates that OSHA proceed with a request for voluntary submission to an inspection before it applies for a warrant. And the warrant procedure, in our judgment, should be the same for all cases.

We think it clear from the decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) that the Supreme Court, in mandating the issuance of an administrative warrant before an involuntary inspection could be conducted by OSHA under the Act, contemplated that usual procedures attendant the issuance of a warrant would be followed and would be sufficient to satisfy the Fourth and Fifth Amendment requirements.

Plaintiff's next contention is that defendants cannot rely upon Instruction CPL 2.25A since it was not promulgated pursuant to the rulemaking procedures required by the Administrative Procedures Act. The APA distinguishes between interpretive rules, general statements of policy, rules of agency organization, procedure or practice, etc. which are exempt from the notice and comment requirements of the APA and legislative rules which must be promulgated pursuant to the notice and comment procedures. 5 U.S.C. § 553. In our opinion, CPL 2.25A is not subject to the notice and comment procedure. It was not promulgated as a legislative rule by the Secretary of Labor; it is not a standard which sets forth a course of conduct or behavior to which employers will be held under penalty of law; nor does it have sufficient impact to justify the notice and comment procedure. It is a neutral, reasonable administrative scheme by which the Agency chooses the work sites to be inspected in furtherance of the purposes of the Act. And it remains subject to the control of the courts in the exercise of their responsibilities under the Constitution as explained in *Barlow's*. The predecessor to CPL 2.25A was upheld as a reasonable administrative plan and was found to be exempt from notice and comment procedures in *Stoddard Lumber Co. v. Marshall*, 627 F.2d 984 (9th Cir. 1980). We believe the same result is dictated here.

Plaintiff's final contention is that Caldwell failed to make a showing that plaintiff fell within the dimensions of CPL 2.25A when he appeared before Magistrate Sussman. Thus, plaintiff urges that Caldwell was obliged to show that plaintiff experienced a lost work day injury rate of 4.0 or higher and a rate of lost work day injuries in its establishment of 3.0 or higher.

In *Barlow's, Inc., supra*, the Supreme Court directed that warrants could issue when requested pursuant to an administrative plan which contains specific neutral criteria. Such a plan, in our opinion, is contained in CPL 2.25A and was presented to the Magistrate. The inspection is a part of an industry-wide investigation. Plaintiff was selected at random from a list of members of the industry. OSHA's entire interest is not in those who maintain plants which are highly hazardous. Information can be gained and utilized from plants with a low hazard rating. OSHA's mission is one of education as well as regulation. Inspection of plants in a given industry on a random basis pursuant to an administrative plan containing specific neutral criteria such as that presented here, comports with the Fourth Amendment.

For the foregoing reasons we conclude that plaintiff's motion to quash the subject warrant should be and it is denied. We also conclude on plaintiff's complaint for declaratory judgment and injunctive relief that a judgment should enter in favor of the defendants and against the plaintiff and that plaintiff's complaint should be dismissed.

We will, however, withhold the entry of final judgment until the Court of Appeals for this circuit has decided *Rockford Forge*. That court's decision in that case may have a substantial affect on the likelihood of appeal in this case.