INGERSOLL–RAND COMPANY, a Corporation, Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, U. S. Department of Labor, Defendants.

Civ. A. No. 82–27.

United States District Court, M. D. Pennsylvania.

March 2, 1982.

A. Dennis Terrell, Morristown, N. J., Bernard A. Ryan, Jr., Harrisburg, Pa., for plaintiff.

David C. Shipman, Asst. U.S. Atty., Harrisburg, Pa., Marshall Harris, U.S. Dept. of Labor, Mark V. Swirsky, Philadelphia, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

### Factual Background

On December 3, 1981, Compliance Officer-Industrial Hygienist Susan K. Schneider of the Harrisburg Area Office of the Occupational Safety and Health Administration (hereinafter referred to as "O.S.H.A.") attempted to initiate a warrantless inspection of a Shippensburg manufacturing facility operated by the Ingersoll-Rand Company. Following a company policy that inspection would not be permitted without a validly executed search warrant, the Personnel Manager of the plant refused Ms. Schneider's request. Counsel for Ingersoll-Rand then asked O.S.H.A. for 48-hour advance notice of any application for a warrant, and requested an opportunity to discuss the proposed inspection with O.S.H.A. officials prior to the application. They also sought to be present at the warrant hearing. Pursuant to 29 C.F.R. § 1903.4 (1981), however, Acting Area Director Leonard Renner filed an *ex parte* application for an inspection warrant with United States Magistrate John Havas on January 5, 1982.

The warrant application, sworn to by Mr. Renner, recited that the Shippensburg Ingersoll-Rand facility had been selected for inspection on the basis of a "general administrative plan for the enforcement of the Act derived from neutral sources." The plan utilized was O.S.H.A. Instruction CPL 2.25B "Scheduling Systems for Programmed Inspections," 1981 (CCH) O.S. H.D. ¶ 12,637 (hereinafter cited as "CPL 2.25B"), a copy of which was attached to the application. Pertinent sections of CPL 2.25B were referred to in Mr. Renner's affidavit. The application proposed a wall-to-wall inspection of the entire facility, including document review, employee interviews, photographs and the affixing of monitor devices to employees. The inspection would extend over a ten-day time period.

After considering the sworn application and the proposed warrant, Magistrate Havas issued the warrant on January 5, 1982. Ms. Schneider returned to the Shippensburg plant on January 6, 1982 and was again refused entry. On January 7, 1982, Ingersoll-Rand filed a motion to quash the warrant. By a stipulation entered into on that date, O.S.H.A. and Ingersoll-Rand agreed to maintain the status quo pending a full hearing on the matter. The Government filed a cross-motion for civil contempt on January 11, 1982. The issues were fully briefed and a hearing was held on January 27, 1982, which, by agreement of the parties, constituted the trial on the merits of the cross-actions for a permanent injunction and for an adjudication of civil contempt, pursuant to Federal Rule of Civil Procedure 65(a)(2). This Memorandum and Order will dispose of both actions.

## Discussion

### I. Existence of Probable Cause

The central issue in this case is whether or not the O.S.H.A. warrant application filed by Leonard Renner met the probable cause standard enunciated by the Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In that case, the Court noted that probable cause for workplace inspections pursuant to 28 U.S.C. § 657 could be established

not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]. [citation omitted] A warrant showing that a specific business has been chosen for an OSHA search on the basis of a *general administrative plan* for the enforcement of the Act *derived from neutral sources* . . . would protect an employer's Fourth Amendment rights.

*Id.* at 320–321, 98 S.Ct. at 1824 (emphasis added).

■ Clearly, the application presented to Magistrate Havas made such a showing. The administrative plan relied upon by O.S. H.A. in its warrant application is designed to select for inspection industries with "the greatest potential for health problems." CPL 2.25B, Appendix A. The selection formula is based on research data on the hazardous substances identified with each industry classification, the number of employees potentially exposed to those substances, and the severity of potential adverse health effects. *Id.* Utilizing this data, O.S.H.A.'s National Office ranks the industries and then generates lists of the establishments in each industry classification within the regions administered by the various O.S.H.A. Area Offices. *Id.*, I.2.a. The Area Offices, in turn, place establishments on an "inspection register," selecting businesses from the list for the area *in consecutive order* until they have reached their quota of inspections for the fiscal year. *Id.*, I.2.b. & I.1.b. *Every* worksite on the register is inspected, unless it falls within certain specified exceptions. *Id.*, I.1.c.(2).

Unquestionably, this procedure precludes the arbitrary selection of Ingersoll-Rand or any other particular business facility. The precise order in which the establishments on the register are inspected is left to the determination of the Area Office in accordance with the "efficient use of available resources," *Id.* I.1.c.(1), but Plaintiff surely cannot argue that the decision to inspect its

facility in January rather than in July violates the standard set forth in *Barlow's*. The steps outlined above were detailed in the O.S.H.A. Instruction CPL 2.25B that was attached to Mr. Renner's application. Renner cited the applicable sections in his affidavit, and stated that the instruction procedures were followed in this case. Perhaps the application could have enumerated and explained these steps with more clarity, but that complaint is hardly grounds for invalidating the warrant.

Plaintiff's reliance on *Matter of Urick Property*, 472 F.Supp. 1193 (W.D.Pa.1979) is misplaced. In *Urick*, the Area Office was proceeding in accordance with an administrative plan that allotted only *one* inspection from among all of the foundries in the region. Additional information was necessary, therefore, to insure that the selection of the particular foundry was based on neutral, non-arbitrary criteria. *Id.* at 1195. Such an individualized showing would be superfluous in the instant situation in which every facility on the register is inspected. Random selection of a worksite pursuant to a rationally and neutrally designed industry-wide investigation, like the one undertaken here, has been specifically held to establish the requisite probable cause. *See Stoddard Lumber Co., Inc. v. Marshall*, 627 F.2d 984, 988 (9th Cir. 1980). *See also Chicago Aluminum Casting Co. v. Donovan*, 535 F.Supp. 392 (N.D.Ill.1981), at 13. Indeed, the court in *Urick* acknowledged the validity of random selection as a basis for valid O.S.H.A. warrant. *Matter of Urick Property*, 472 F.Supp. 1193, 1195 (W.D.Pa. 1979)

## II. Scope of the Warrant

█ Plaintiff also contends that the warrant, as issued, is overly broad. This argument is similarly without merit. As Defense counsel has aptly pointed out, a warrant for a general inspection must be comprehensive in scope, because the exact location of violations cannot be known prior to entering the establishment. *Marshall v. Chromalloy American Corp.*, 589 F.2d 1335, 1343–44 (7th Cir. 1979). *Accord, In The*

*Matter Of Peterson Builders, Inc.*, 525 F.Supp. 642, 10 OSHC(BNA) 1169, 1171 (E.D.Wis.1981). *Cf. Marshall v. North American Can Co.*, 626 F.2d 320, 323 (3d Cir. 1980) (distinguishing between § 8(f) and § 8(a) inspections). We do not find that the proposed inspection contravenes any regulations or statutes limiting O.S.H.A. general inspections, or transgresses the reasonableness requirement of the Fourth Amendment. *Chromalloy*, 589 F.2d at 1343–44. Moreover the regulations promulgated by O.S.H.A. explicitly "preclude unreasonable disruption of the operations of the employer's establishment." 29 C.F.R. § 1903.7(d) (1981).

█ Plaintiff specifically objects to O.S.H.A.'s intention to affix personal monitoring equipment upon Ingersoll-Rand employees pursuant to the authorization of 29 C.F.R. § 1903.7(b) to "take environmental samples" and "employ other reasonable investigative techniques." The courts have universally found personal sampling devices to be a reasonable mode of inspection. *See e.g., Matter of Metro-East Manufacturing Co.*, 655 F.2d 805 (7th Cir. 1981); *Matter of Keokuk Steel Castings*, 638 F.2d 42, 46 (8th Cir. 1981); *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1290 (9th Cir. 1979); *American Smelting & Refining Co.*, 501 F.2d 504, 514 (8th Cir. 1974); *Donovan v. Blue Ridge Pressuring Castings, Inc.*, Civ. No. 81–1260 (M.D.Pa. Dec. 1, 1981); *Marshall v. Rochester Shoe Tree Co., Inc.*, Misc. No. 306 (N.D.N.Y. April 4, 1981); *In The Matter Of The Inspection of Cleveland Electric Illuminating Co.*, Misc. No. 80–2128 (N.D.Ohio, Feb. 27, 1981). Nevertheless, the Seventh Circuit, in *Matter of Metro East*, prohibited personal monitoring because in its view the regulation does not provide "fair warning" to employers that such sampling devices are reasonable investigative techniques within the meaning of 29 C.F.R. § 1903.7(b). *Matter of Metro-East Manufacturing Co.*, 655 F.2d 805, 811 (7th Cir. 1981). We agree with the dissent in that case, however, that the language of the regulation, particularly when considered within the context of the Occupational Health and Safety Act itself, is not so am-

biguous and uncertain as to violate due process. *Id.* at 812. We also find that the holding of PLUM CREEK, in which the court declined to order the company to rescind its policy forbidding employees to wear monitoring devices, is not applicable here. *See Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1290 (9th Cir. 1979). Ingersoll-Rand has made no mention of any such company policy, nor has it presented allegations that the devices pose a threat to employee safety. *See Matter of Keokuk Steel Castings*, 638 F.2d 42, 46 (8th Cir. 1981).

### III. Petition for Adjudication of Civil Contempt

■ In its arguments opposing the government's application for an adjudication of civil contempt, Ingersoll-Rand makes much of the fact that it attempted to consult with O.S.H.A. officials prior to the application for a warrant and that its counsel requested to be present at the warrant hearing. *Ex parte* hearings are authorized by 29 C.F.R. § 1903.4, however, and § 1903.4(d) declares that "*[e]x parte* inspection warrants shall be the *preferred* form of compulsory process ...." 29 C.F.R. § 1903.4(d) (emphasis added). Although Ingersoll-Rand's attempts to reach an informal agreement with O.S.H.A. officials may be laudable, we do not think that factor excuses its refusal to comply with a valid warrant properly issued by Magistrate Havas.

Accordingly, we find Ingersoll-Rand to be in civil contempt of court. We will direct Ingersoll-Rand to purge itself of its contemptuous conduct by permitting inspection of its Shippensburg facility in accordance with the terms of the original warrant, at a date and time established by the appropriate O.S.H.A. officials. Because we do not find any evidence of bad faith on the part of Ingersoll-Rand-and no such allegations were asserted by O.S.H.A.—we will deny the Government's request for a compensatory fine. However, we will assess a conditional fine of five hundred dollars ($500) per day for each day Ingersoll-Rand fails to comply with the terms of this Order.