**ERIE BOTTLING CORPORATION,
Petitioner,**

v.

**Raymond J. DONOVAN, Secretary of
Labor, United States Department of
Labor, Respondent.**

Civ. A. No. 82–79 Erie.

United States District Court,
W. D. Pennsylvania.

May 25, 1982.

Edward W. Goebel, Jr., Erie, Pa., for petitioner.

Matthew J. Rieder, Regional Counsel, U. S. Dept. of Labor, Philadelphia, Pa., for respondent.

OPINION

WEBER, Chief Judge.

This action involves an inspection warrant issued by the United States Magistrate to the Occupational Safety and Health Administration (OSHA), authorizing the safety and health inspection of a plant operated by the Erie Bottling Corporation. This case is presently before us on two motions.

The plaintiff, Erie Bottling Corporation, has moved to quash this inspection warrant.

In its motion to quash the plaintiff challenges the validity of this warrant on two separate grounds. First, the plaintiff alleges that the warrant application does not set forth sufficient facts to support the Magistrate's probable cause determination. Second, the plaintiff contends that the inspection warrant is overbroad in that it authorizes a search beyond that requested by the application; permits agency access to private employee medical records; and allows private interviews of employees on the production line.

The defendants have responded to this motion by filing a Petition for Adjudication of Civil Contempt. In this petition the defendant alleges that the OSHA inspection warrant obtained in this case is valid in all respects. Therefore, according to the defendant the plaintiff's refusal to honor this warrant constitutes a contemptuous act. Defendant requests that we order the plaintiff to purge itself of this contempt by permitting a plant inspection pursuant to the warrant. Defendant also requests that we assess its costs in defending this litigation against the plaintiff as a fine.

The issues raised by these motions have been fully briefed and argued by both parties. Accordingly, this matter is now ripe for our disposition.

This controversy began in January of this year. On January 8, 1982, Anthony Rizzo, an OSHA compliance officer, conducted a limited inspection of the Erie Bottling Corporation plant. Rizzo began this investigation by reviewing the employee injury records maintained by Erie Bottling Corporation. These records revealed that this employer had a lost work day injury rate of 29.7, a rate which far exceeded the national average for manufacturing industries of 5.2. Under existing OSHA regulations this finding mandated a full scope safety investigation of the plant. Accordingly, Rizzo requested permission to conduct a full scope inspection. Erie Bottling officials refused to permit such an inspection, however, stating that an inspection would only be allowed pursuant to a warrant.

On March 10, 1982, John H. Stranahan, Acting Area Director for the Department of Labor made an ex parte application to the United States Magistrate for a warrant authorizing inspection of this plant. As described in the warrant application this inspection of the Erie Bottling Plant was one part of a comprehensive program of health and safety inspections conducted by OSHA. This particular facility was chosen for inspection pursuant to procedures set forth in OSHA Instruction CPL 2.25 B "Scheduling Systems for Programmed Inspections." [Reference File 21:9186] 1981 (CCH) OSHD ¶ 12637 et seq., (hereinafter CPL 2.25 B).

CPL 2.25 B describes in detail the procedures used by OSHA in developing a comprehensive health and safety inspection program. The first step in this procedure involves the preparation by OSHA's national office of an establishment list. This list contains all work establishments within the jurisdiction of the various OSHA regional offices. These establishments are listed on the basis of their standard industrial classification (SIC). The various industries on this list are then rank-ordered according to their lost workday rate, the highest lost work rate being at the top of the list. Only those industries whose lost workday rate exceeds the national average of 5.2 are included on this list. The establishment list prepared by the national office is then reviewed by the OSHA area director. He makes additions and deletions on the list as mandated by CPL 2.25 B I a (2)(a), (b).

From this list an inspection register is then prepared. This inspection register consists of a schedule of establishments equal to twice the number of inspections authorized for the regional office for the current fiscal year. This list is then divided into two inspection cycles. OSHA regulations require that one inspection cycle be completed before inspections begin on those plants listed in the second inspection cycle. Regional officers are given considerable latitude in scheduling the inspection of facilities on each individual cycle.

The application for inspection warrant submitted in this case recited that this inspection was conducted pursuant to the criteria established by CPA 2.25 B. The application then described the procedures used by the Department in developing an establishment list, inspection register and inspection cycle. The application further indicated that the Erie area office had projected that it could perform 44 general safety inspections in the 1982 fiscal year. Therefore, under the procedures described above, an inspection register containing the names of 88 establishments had been prepared by that office. This list was divided into two inspection cycles of 44 industries each. The application further stated that the Erie Bottling plant was the 18th establishment on the first inspection cycle. According to the application this plant was selected at random from the inspection cycle for inspection at this time.

On March 19, 1982, the Magistrate, after a review of the proposed warrant and application, issued an inspection warrant to OSHA for this facility. On March 22, 1982, Mr. Rizzo served this warrant on the Erie Bottling Corporation. At that time plant officials requested that they be given an opportunity to review the warrant with counsel prior to permitting an inspection. Mr. Rizzo complied with this request and informed plant officials that he would return the next day to commence the inspection. On March 23, 1982, when Mr. Rizzo returned to the Erie Bottling plant he was informed that Erie Bottling would not permit the inspection to proceed. This lawsuit followed.

## I. PLAINTIFF'S MOTION TO QUASH INSPECTION WARRANT.

■ Plaintiff's first argument in support of its motion to quash this inspection warrant is that the warrant application fails to provide the Magistrate with sufficient information to enable him to make a probable cause determination. In reviewing the Magistrate's probable cause determination we recognize that we are limited in what we may consider. In this case our scrutiny is limited to the warrant and application themselves and to the evidence presented before the Magistrate unless some strong showing is made that the party seeking the warrant sought to deceive the Magistrate. *Franks v. Delaware*, 438 U.S. 154, 171–172, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1977). We have carefully reviewed all the materials submitted by the Department in its application for inspection warrant. Upon a review of this information we conclude that plaintiff's first argument is without merit.

■ Since the United States Supreme Court's decision in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), it has been clear that OSHA can conduct nonconsensual safety inspections only when a valid warrant has been issued authorizing such an inspection. The Court's decision in *Barlow's* recognized the fact that property owners had a constitutionally protected interest in being free from warrantless searches by administrative agencies. By interposing a judicial officer between property owners and these administrative agencies the Court sought to insure that administrative inspections are conducted in a reasonable manner, consistent with statutory and constitutional constraints.

■ The Court in *Barlow's* recognized, however, that inspections by administrative agencies differ in kind from searches conducted by law enforcement officials. This difference is reflected in the Court's discussion of what constitutes probable cause justifying the issuance of an OSHA search warrant. As the Court noted, for an OSHA search warrant to issue, "probable cause in the criminal law sense is not required. For purposes of an administrative search . . . probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation, but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]. (citations omitted).' A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act

derived from neutral sources ... would protect an employer's fourth amendment rights." *Marshall v. Barlow's, Inc.,* 436 U.S. 320–21, 98 S.Ct. 1824.

In this case the Secretary of Labor does not argue that this warrant was issued in response to specific charges that safety violations existed at the Erie Bottling Corporation plant. Instead the Secretary relies exclusively on his authority to conduct inspections pursuant to a neutral administrative plan to justify this search warrant.

■ In this case we believe that the Secretary's position is well taken. The general administrative plan embodied in the CPL 2.25 B is clearly calculated to result in an unbiased enforcement of the Act. Moreover, the method of selection adopted by this plan seems entirely reasonable. Facilities to be inspected are drawn from an establishment list which contains the names of firms in industries whose lost work day rate exceeds the national average. Individual firms are chosen for inspection in a random manner and are subject to full inspection only after an OSHA compliance officer determines that that firm's lost work day rate exceeds the national average.

By tying safety inspections to some measure of industrial accidents, such as lost work days, OSHA insures that its inspections are based on a neutral reliable source. This method of plant selection also insures that the agency's limited resources are utilized in an efficient manner. Finally, this procedure precludes the arbitrary selection of any particular business facility for inspection. CPL 2.25 B requires that all of the businesses on a given inspection cycle must be inspected before the area office proceeds to the next inspection cycle. Because all of the businesses selected for inspection through the CPL 2.25 B plan must be inspected, we avoid the problem which arises when only one firm is selected from a list for inspection. This problem, in the past, has been a fatal flaw in some OSHA inspection programs. See, *In the Matter of Urick Property,* 472 F.Supp. 1193 (W.D.Pa. 1979), (OSHA inspection plan which arbitrarily selected one foundry in a seventeen county area for inspection held invalid).

■ Moreover in this case the warrant application itself indicated that Erie Bottling was randomly selected from the inspection cycle for inspection. This random ordering of inspections should guarantee that inspections are carried out in a neutral manner, consistent with both statutory and constitutional constraints. See, *Ingersoll-Rand Co. v. Donovan,* 540 F.Supp. 222, 10 BNA OSHC 1395. (M.D.Pa.1981).

In arguing that this warrant application does not set forth sufficient facts to enable the Magistrate to make a probable cause determination, the plaintiff focuses on the fact that the application merely described the procedures used in developing a general administrative plan. The application did not give the Magistrate the underlying data used by OSHA in developing this plan. Nor did the application provide the Magistrate with copies of the establishment list, inspection register or inspection cycles used by the area director. The plaintiff argues that, without this information, the Magistrate could not make an informed decision on the issue of probable cause. We disagree.

■ We believe that this argument fundamentally misconstrues the nature of the inquiry being made by the Magistrate at this proceeding. The court in *Barlow's* contemplated that applications for OSHA inspection warrants would be limited proceedings which would not unduly consume administrative resources or exceed manageable proportions. See, *Marshall v. Barlow's, Inc.,* 436 U.S. at 321, 98 S.Ct. at 1824. An extended inquiry into the validity of the data underlying an administrative inspection plan goes far beyond the limited proceedings intended by the Court in *Barlow's.* See, *Marshall v. Chromalloy v. American Corporation,* 589 F.2d 1335, 1345 (7th Cir. 1979). The Magistrate should not be placed in a position of second guessing the wisdom of an administrative plan developed by the Department of Labor. Quite the contrary in reviewing a warrant application the Magistrate should, consistent with constitu-

tional standards, defer to the Secretary's expertise in selecting a program for inspection of hazardous industries. *In the Matter of Urick Property*, 472 F.Supp. at 1195. The Magistrate should also be entitled to rely upon the verity of sworn statements made in an application for an inspection warrant.

In this case the warrant application presented to the Magistrate generally described the procedure used in establishing an inspection plan. This description provided the Magistrate with sufficient information to determine the validity of the basic methodology used by the Secretary in selecting Erie Bottling for inspection. Thus the application presented the Magistrate with sufficient information to allow him to make an informed probable cause determination.

Plaintiff's other contentions on this issue require little discussion. The fact that this warrant was issued ex parte does not mean that the warrant is invalid. Ex parte applications are now contemplated by the regulations governing OSHA search warrants; See, 29 CFR § 1903.4, and this type of proceeding has been approved by those courts which have considered the question. See, *Ingersoll-Rand Co. v. Donovan*, 10 OSHC at 1397.

Nor do we feel that the warrant application had to describe each individual step taken by the area director in implementing a CPL 2.25 B program of inspection. The application generally stated that the CPL 2.25 B procedures were followed. This, in our view, is sufficient to demonstrate compliance by the OSHA area director with the requirements of this plan. Therefore, we find no error in the Magistrate's determination that probable cause existed for the issuance of this warrant.

The plaintiff also argues that the inspection warrant issued in this case is invalid because it is overbroad in several particulars. At the outset plaintiff contends that the warrant authorized a search which exceeded the strict parameters of the warrant application. In addition, the plaintiff contends that the warrant improperly gave OSHA compliance officers access to private employees medical records, and prevented the employer from being present at employee interviews conducted on the production line.

The first of these contentions requires little discussion. The warrant issued in this case authorized a noise inspection of the plaintiff's plant in terms which generally paraphrase Section 8 of the Occupational Safety and Health Act. 29 U.S.C. § 657(a). While this warrant could have been drafted more narrowly we do not believe that the generality of the language used necessarily renders it invalid for overbreadth. See, *Marshall v. Chromalloy American Corp.*, 589 F.2d 1335, 1343–44 (7th Cir. 1979), (warrant which merely paraphrases the act held not to be overbroad).

Nor do we believe that the warrant is invalid because it authorizes a wall-to-wall inspection of this facility. See, *Ingersoll-Rand Co. v. Donovan*, 10 OSHC at 1395. As noted above, this warrant was issued as part of a general administrative program of industrial site inspection. The nature of such a program is, by definition, comprehensive. In order to conduct an adequate comprehensive inspection of this type an OSHA search warrant must, of necessity, be cast in general terms. Therefore, in this case we would not quash this warrant merely because it contains broad language.

We do believe, however, that the warrant issued in this case is overbroad in several specifics. First, that warrant authorizes the inspection and copying of "[employee] injury and illness records required to be maintained [by OSHA regulations] and any other records related to employee safety and health."

With respect to those records which the employer is required by law to maintain we have little difficulty. Such documents should be readily available for inspection by OSHA compliance officers and we understand that the Erie Bottling Corporation has agreed to turn these materials over to the Department. We are troubled, how-

ever, by the fact that this warrant also authorizes inspection and copying of additional private employee medical records.

At the outset we question whether such material can be obtained through an administrative search warrant. The text and legislative history of the act take care to distinguish between physical inspection of a plant and examination of documents. Compare 29 U.S.C. § 657(a) with 29 U.S.C. § 657(b). The former activity can be authorized pursuant to a validly executed search warrant. The latter is permitted, by statute, through an administrative subpoena procedure. This distinction has led at least one court to conclude that examination of documents, such as employee medical records, cannot be authorized by a search warrant. Rather the agency must use its administrative subpoena power to obtain such documents. *Matter of Inland Steel Co.*, 492 F.Supp. 1310, 1313–16 (N.D. Ind.1980).

However even if we believed that the document inspection requested in this case could be permitted pursuant to a search warrant, we would still not authorize such an inspection on the showing made by OSHA in this case. We are particularly disturbed by the scope of the warrant issued in this matter. That warrant, as issued by the Magistrate, authorized the inspection and copying of any employee medical records "related to employee safety and health." This encompasses what is potentially an enormous range of confidential material. Many employees routinely turn to plant health officers for assistance upon a host of medical problems. These employees have a justifiable interest in protecting their private medical records from scrutiny by third parties. See, *United States of America v. Westinghouse Electric Corp.*, 638 F.2d 570, 580–81 (3d Cir. 1980), (discussing employee privacy rights in the context of administrative subpoenas). Moreover, the contents of many of these private records would be wholly irrelevant to any inquiry into safety conditions at the employee's work place. Thus many of these records would fall beyond the proper jurisdiction of the Occupational Safety and Health Administration.

In this case the Department has made no particularized showing of a need for all employee medical records. Without such a showing we have no assurance that the scope of this inspection would. be properly limited. The warrant and accompanying application certainly do not place any significant limitations on the power of the agency to examine all employee medical records.

The Department argues, however, that OSHA regulations impose reasonable constraints on compliance officers when examining private medical records, constraints which would protect the privacy rights of all employees. This does not, in our view, correct the fundamental defect in this warrant as issued. OSHA compliance officers may scrupulously follow administrative procedures in reviewing employee medical records. On the other hand they may not show scrupulous concern for the privacy rights of employees and if they failed to show such concern there would be nothing in the warrant limiting their conduct.

■ In order to protect these employee privacy interests a search warrant should at a minimum: (1) detail the type of medical information sought from these records; and (2) provide affected employees with some notice of the agency's intent to examine materials in their personal medical files. See, *United States of America v. Westinghouse Electric Corp.*, supra. Since the warrant issued in this case does not satisfy these requisites, we must quash its enforcement to the extent that it purports to authorize inspection of private medical records which the employer is not required by law to maintain.

A second specific problem with the warrant, as issued, involves the right of OSHA compliance officers to conduct private interviews with employees. The warrant gives OSHA compliance officers the right to question "any owner, operator, agent or employee . . . privately on the employer's premises during working hours . . .".

Plaintiff argues that some restrictions should be imposed on this right. Specifically plaintiff contends that OSHA compliance officers should not be allowed to conduct these private interviews with employees at their work stations during a physical inspection of the production line itself. According to the plaintiff conducting these employee interviews during the plant inspection would unduly infringe upon the employer's right to accompany the inspectors during their physical examination of the work site. At the hearing held on this matter the Secretary indicated that some private on-line interviews with employees were contemplated as part of the plant inspection.

■ In this case we feel that there are two problems with the interview procedure proposed by the Secretary. First, while we recognize that the Act clearly allows for private employee interviews we also understand that employers have, by statute, a right "to accompany the secretary or his authorized representative during the physical inspection of any work place . . . for the purpose of aiding such inspection." 29 U.S.C. § 657(e). The type of inspection procedure contemplated by the Secretary in this case would significantly interfere with this right. If these private interviews are conducted while employees are on the production line then the employer would be barred from accompanying inspectors during at least part of their physical inspection of the plant. We believe that these interviews can be conducted in a way which does not directly impinge upon the employer's rights under 29 U.S.C. § 657(e). Therefore, we feel that the Secretary should be required to adopt some less intrusive procedure for conducting employee interviews.

Similarly, we believe that the interview procedure proposed by the Secretary in this case violates the statutory mandate that inspections be carried out "during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner...". 29 U.S.C. § 657(a)(2). On-line interviews of employees could be enormously disruptive of plant operations. These interviews would necessarily result in delays in production. They could also present some safety risks to employees inasmuch as the interviews would divert the employees' attention from their work. They therefore are not in our view a reasonable technique to employ in conducting a safety inspection.

■ This does not mean that the Secretary would be totally precluded from conducting private employee interviews as part of a comprehensive plant inspection. Quite the contrary, these interviews could be held during regular breaks, at the lunch hour or at other times when employees are away from the production line itself. Such a procedure would not unduly restrict the Secretary in conducting his investigation, but would insure that any investigation is conducted in a safe and reasonable manner. Therefore, we conclude that this warrant is invalid insofar as it is construed to authorize private interviews with employees while those employees are actually on the production line. We will order the warrant modified accordingly.[1]

■ One final issue deserves our attention. The plaintiff contends that, by requiring the attachment of dosimeters and other metering devices to employees, the warrant imposes an unreasonable burden on the employer. We disagree. We believe, in accordance with the vast majority of cases, that the use of these monitoring devices is a reasonable investigative technique. See, *Ingersoll-Rand Co. v. Donovan*, supra, and cases cited therein. We, therefore, would not strike as invalid that section of the

1. This conclusion is in no way inconsistent with the court's holding in *Donovan v. Metal Bank of America, Inc.*, 516 F.Supp. 674, 681 (E.D.Pa.1981). *Donovan* simply concluded that private employee interviews conducted at a reasonable time and in a reasonable manner did not violate the employer's right to accom- pany OSHA inspectors during their physical inspection of a plant. We agree with this general principle. We feel, however, that the on-line interrogation proposed in this case is not a reasonable method for conducting private employee interviews.

warrant which authorizes the use of such devices.

## II. THE SECRETARY'S PETITION FOR ADJUDICATION OF CIVIL CONTEMPT.

 Having concluded that this warrant, with some modifications, is valid we turn to the Secretary's petition for adjudication of civil contempt. It is clear that the determination of civil contempt rests within the sound discretion of the court. See, *Thompson v. Johnson*, 410 F.Supp. 633 (E.D. Pa.1976), *aff'd.* 556 F.2d 568 (3d Cir. 1977); *United States of America v. Reide*, 494 F.2d 644 (2d Cir. 1974). In this case we do not believe that the extreme sanction of civil contempt is appropriate. The plaintiff in this case has acted in good faith in challenging the validity of this inspection warrant. As noted above several of these challenges have merit. We, therefore, would not find this plaintiff in contempt for failing to obey an inspection warrant which was invalid in several particulars. Of course, if the plaintiff continues to refuse to permit an inspection under this warrant as modified it may become subject to penalties for civil contempt.

An appropriate order will issue.

## ORDER

AND NOW, this 25th day of May, 1982, in accordance with the accompanying Opinion, IT IS ORDERED that the plaintiff's motion to quash is DENIED with the following exceptions:

(1) The Secretary may not, pursuant to this warrant, examine private employee medical records other than those which Erie Bottling Corporation is required by law to maintain.

(2) The Secretary may not, pursuant to this warrant, conduct private interviews of employees while these employees are on the production line.

The Secretary's Petition for Adjudication of Civil Contempt is DENIED.