**FEDERAL CASTING DIVISION, CHROMALLOY AMERICAN CORPORATION, Plaintiff-Appellant, Cross-Appellee,**

v.

**Raymond J. DONOVAN, Secretary of Labor, et al., Defendants-Appellees, Cross-Appellants.**

Nos. 81–2026, 81–2103.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1982.

Decided July 20, 1982.

As Amended July 26, 1982.

Clifford B. Buelow, Milwaukee, Wis., for plaintiff-appellant.

Charles I. Hadden, Washington, D.C., for defendants-appellees.

Before SPRECHER * and CUDAHY, Circuit Judges, and DOYLE, Senior District Judge.**

CUDAHY, Circuit Judge.

This case concerns the validity of an inspection by the Occupational Safety and Health Administration ("OSHA") conducted more than two years after the warrant for the inspection was issued. In light of the particular facts of this case, we affirm the district court's decision finding that the inspection was valid.

I

On April 20, 1977, a federal magistrate issued an inspection warrant to OSHA, permitting it to inspect the foundry of Chromalloy American Corporation's Federal Casting Division ("Federal Casting"). Probable cause for the warrant was based upon the National Emphasis Program (the "NEP"), an administrative inspection plan developed by OSHA to inspect the nation's foundries. The warrant authorized a health

and safety inspection, and, by its terms, was to be returned within ten days. When inspectors arrived at Federal Casting's foundry on April 20, however, the company refused to permit the inspection. OSHA returned the unexecuted warrant to the magistrate and, on May 17, 1977, the Secretary of Labor (the "Secretary") initiated civil contempt proceedings against Federal Casting in the district court for failure to comply with the warrant.

On July 12, 1977, the district court found Federal Casting in civil contempt. *Marshall v. Chromalloy American Corp., Federal Malleable Division*, 433 F.Supp. 330 (E.D. Wis.1977). The court in its contempt and purge order directed the company to permit OSHA to conduct the inspection authorized by the warrant "forthwith." The court rejected Federal Casting's claims that federal magistrates were not empowered to issue OSHA inspection warrants, that the warrant lacked probable cause and that the scope of the warrant was unconstitutionally broad.

Federal Casting filed a notice of appeal on July 19, 1977, and moved for a stay of the district court's order pending appeal. The district court issued a temporary stay, but then dissolved it on July 25, 1977. OSHA returned to Federal Casting's foundry the next day and, pursuant to the district court's purge order, began a safety and health inspection. The inspection was interrupted, however, on July 29, 1977, when this court issued a temporary stay of the district court order. At that time, the safety portion of the inspection, but not the health portion, had been completed.

The stay remained in effect until January 2, 1979, when this court issued a decision rejecting Federal Casting's objections to the warrant in issue. *Marshall v. Chromalloy American Corp., Federal Malleable Division*, 589 F.2d 1335 (7th Cir. 1979).[1] Federal

---

* Circuit Judge Robert A. Sprecher heard oral argument, participated in the conference which followed, and voted to affirm. He died May 15, 1982, and did not participate in the preparation or approval of this opinion.

** Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

1. The court found that magistrates may issue OSHA warrants, *Marshall v. Chromalloy Am. Corp., Fed. Malleable Div.*, 589 F.2d 1335,

Casting's petition for rehearing was denied on March 14, 1979.

On March 26, 1979, Federal Casting filed for a stay of this court's mandate pending review by the Supreme Court. This motion was denied on April 9, 1979. Federal Casting filed a petition for a writ of certiorari on June 12, 1979, which was denied on October 2, 1979. *Chromalloy American Corp., Federal Malleable Division v. Marshall*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).

OSHA returned to finish its inspection of the foundry on December 3, 1979. The company refused to permit the inspection, however, alleging that the warrant was no longer valid. The inspectors insisted, on the other hand, that the inspection was pursuant to the district court's contempt order, not the warrant. Following a telephone conversation between the parties, in which OSHA threatened to bring contempt proceedings, Federal Casting permitted the inspection to be completed "under protest" beginning December 11, 1979. As a result of the inspection, OSHA issued two citations, which were presented to the Occupational Safety and Health Review Commission.

On August 7, 1980, Federal Casting filed this action in district court, claiming that the December 11, 1979, inspection had violated Federal Casting's Fourth Amendment rights. The company sought an order declaring that the warrant had been invalid when executed, prohibiting the use of the evidence obtained in the inspection, quashing the citations which had issued and enjoining further administrative proceedings before the Review Commission.

Federal Casting and the Secretary of Labor filed cross-motions for summary judgment. The company argued that, because the NEP had been abolished since the initial issuance of the warrant, there was no probable cause for the inspection. Further, the company claimed that the warrant had, by

its items, expired ten days after it was issued and therefore was not a valid basis for the inspection. The Secretary argued, however, that abolition of the NEP did not render the inspection unconstitutional because the inspection had originally been sought pursuant to the plan. The passage of time, due in large part to the company's actions, ought not to serve to invalidate an inspection which was valid in the first instance.

The district court granted the Secretary's motion for summary judgment on May 28, 1981. *Federal Casting Division, Chromalloy American Corp. v. Donovan*, 514 F.Supp. 617 (E.D.Wis.1981). The court found that because the warrant had been issued pursuant to a general administrative inspection plan derived from neutral sources, the later abandonment of the plan did not render the warrant invalid. The court found that the essential purpose of the Occupational Safety and Health Act ("the Act"), 29 U.S.C. § 651 et seq., would be defeated if an employer could avoid inspection under a general administrative inspection plan by first litigating the validity of the warrant and then, having lost, litigating the issue whether the warrant had become stale in the meantime. Further, because the warrant had initially been issued pursuant to neutral criteria, the court reasoned that it was less likely to become stale than a warrant based on employee complaints of specific workplace hazards. Federal Casting appeals this decision.

## II

■ Initially, we face a jurisdictional question. The Secretary argues that, because Federal Casting failed to exhaust its administrative remedies, we should not consider its Fourth Amendment claim. The Secretary admits that in order to reach such a result we would have to overrule our decision in *Weyerhaeuser Co. v. Marshall*,

1340–41 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), that the scope of the warrant was proper, *id.* at 1343–44, and that the warrant was supported by

probable cause because it had been issued pursuant to a neutral general administrative inspection plan. *Id.* at 1343.

592 F.2d 373 (7th Cir. 1979).[2] We decline this invitation. While there has not been universal agreement with *Weyerhaeuser*,[3] the Secretary has not convinced us that the reasoning of that decision was in error. Here, as in *Weyerhaeuser*, there is no need for agency development of the record to aid in determining whether a Fourth Amendment violation has occurred, and no agency decision can render the constitutional issue moot. *Weyerhaeuser Co. v. Marshall*, 592 F.2d at 376. Thus, the purposes underlying the exhaustion doctrine would not be served by precluding Federal Casting from pursuing this action. *See Neavear v. Schweiker*, 674 F.2d 1201, 1203 (7th Cir. 1982).

### III

We turn, therefore, to an examination whether OSHA violated the Fourth Amendment by completing its inspection of Federal Casting's foundry on December 11, 1979. Federal Casting argues that the inspection was not supported by probable cause because the administrative program on which the warrant was based was no longer in existence at the time the inspection was completed. In the alternative, Federal Casting argues that probable cause had dissipated because OSHA failed to complete its inspection in a timely manner. We reject both of these contentions and uphold the district court's finding that, as a matter of law, the inspection was constitutionally valid.

█ It is well-settled that administrative inspections of business establishments must conform to the Fourth Amendment. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305 (1978); *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978). The Fourth Amendment requires a finding of probable cause to support an administrative search. *See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). Thus, a warrant supported by probable cause is required for a non-consensual OSHA inspection. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). It is clear, however, that, to support an OSHA search, "[p]robable cause in the criminal sense is not required." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978). *Accord, In re Establishment Inspection of Gilbert & Bennett Manufacturing Co.*, 589 F.2d 1335, 1339 (7th Cir. 1979). When an agency seeks to conduct an administrative inspection, "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978) (footnote omitted) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967)). "[R]easonableness is . . . the ultimate standard." *Camara v. Municipal Court*, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967). Thus, administrative probable cause is a flexible requirement, balancing "the public interest in the inspection [against] the invasion of privacy which the inspection entails." *Burkart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1319 (7th Cir. 1980).

### A

█ Federal Casting first claims that the December 11, 1979, inspection violated the

---

**2.** The Secretary has offered no reasonable basis on which to distinguish this case from *Weyerhaeuser*, and we are unable to discern one. This case arises from virtually the same factual circumstances as were present in *Weyerhaeuser*. Although the inspection in *Weyerhaeuser* was based on an employee complaint, whereas here the inspection was pursuant to a general administrative inspection plan, this difference appears to have no legal significance for the exhaustion issue.

**3.** *Compare Marshall v. Berwick Forge & Fabricating Co.*, 474 F.Supp. 104, 112 (M.D.Pa.1979) (exhaustion not required), *with Baldwin Metals Co. v. Donovan*, 642 F.2d 768, 771–73 (5th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *and Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138–40 (3d Cir. 1979) (exhaustion required).

Fourth Amendment because the NEP, the general inspection program upon which probable cause for the administrative inspection warrant was based, had been abandoned by that time. Thus, Federal Casting argues, probable cause for the inspection no longer existed. We disagree. While probable cause must exist not only at the time the warrant is issued but also at the time the inspection is carried out, *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980), we reject the notion that administrative probable cause vanished here simply because, during the lengthy litigation required to enforce the warrant at issue, the NEP was discontinued.[4]

■ In balancing the public interest in the inspection against the invasion of privacy caused by the inspection we are persuaded that administrative probable cause still existed at the time the inspection was completed. The NEP program was developed as a result of evidence indicating a high incidence of job-related injuries in the foundry industry. *Marshall v. Chromalloy American Corp., Federal Malleable Division*, 589 F.2d 1335, 1342–43 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). This statistical fact remained unchanged by OSHA's decision to discontinue the NEP program. Therefore, probable cause is supported by the strong public interest in a safe workplace. A holding that probable cause dissipated with the end of the NEP would encourage companies to defy warrants issued pursuant to general administrative plans in the hope that such plans would be abolished or abandoned in the course of protracted litigation. Such a result is clearly contrary to the public interest and would conflict with OSHA's statutory mandate "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b).[5] *See Hern Iron Works,*

*Inc. v. Donovan*, 670 F.2d 838, 840 (9th Cir. 1982).

■ On the other side of the scales, Federal Casting can claim no heightened privacy interest merely from the fact that the NEP was abolished. A privacy interest in the context of an administrative search of a business establishment is less weighty than in the context of a police search of a home. *See v. City of Seattle*, 387 U.S. 541, 545–46, 87 S.Ct. 1737, 1740–41, 18 L.Ed.2d 943 (1967). Courts and commentators have, therefore, recognized two preeminent interests that are served by the administrative warrant requirement: it prevents the exercise of "unbridled discretion" by administrative inspectors and provides companies with "assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323, 98 S.Ct. 1816, 1825, 56 L.Ed.2d 305 (1978). *Accord, Burkart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1325 (7th Cir. 1980); LaFave, *Administrative Searches and the Fourth Amendment: The* Camara *and* See *Cases*, 1967 Sup.Ct.Rev. 1, 25. These interests are served by warrants issued pursuant to general administrative inspection plans such as the NEP. The existence of a neutral inspection program precludes reliance on the unbridled discretion of inspectors, and court review assures that the scope of the warrant is constitutionally valid. These protections were invoked here. The valid warrant which was issued demonstrated that Federal Casting was not being arbitrarily singled out for inspection, defined the proper scope of the inspection and put the company on notice of the impending inspection. The fact that the warrant was not executed pending litigation of

---

4. This court has already determined that probable cause existed for this warrant at the time it was issued. *Marshall v. Chromalloy Am. Corp., Fed. Malleable Div.*, 589 F.2d 1335, 1341–43 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).

5. Federal Casting observes that its grounds for opposing the warrant were not frivolous. That circumstance does not, however, affect our analysis. A company which, without cause, resists a lawful warrant, even if it does so in good faith, should not be permitted to benefit from its unlawful conduct.

its validity by Federal Casting did not affect the company's privacy interest, but simply postponed a judicially-approved inspection.[6]

■ Administrative probable cause "is a flexible standard, permitting consideration of the public and individual interests as they are reflected in the facts of a particular case." LaFave, *Administrative Searches and the Fourteenth Amendment: The* Camara *and* See *Cases,* 1967 Sup.Ct. Rev. 1, 20. Under the circumstances in this case, we find that probable cause for the inspection did not terminate upon the discontinuation of the NEP.

**B**

Federal Casting's second argument is that the inspection on December 11, 1979, violated the Fourth Amendment because the warrant was "stale." Federal Casting argues that the warrant, by its terms, required a return within ten days, to be measured from the lifting of the stay of the district court's mandate. Such a calculation would render the inspection of December 11, 1979, untimely. For even if the contempt order controls the issue of timeliness, the company claims that it too expired, at the latest, ten days after the denial on April 9, 1979, of the company's motion to stay proceedings while its petition for certiorari was pending. We reject both contentions.

■ The time limit in the initial warrant was clearly supplanted by the more general term contained in the district court's July 12, 1977, contempt order. Thus, the terms of that order are controlling on the issue of timeliness. That order found Federal Casting to be in contempt for its failure to comply with the initial warrant and

> Ordered that [Federal Casting], in order to purge itself of said contempt, permit any compliance officer of the Occupational Safety and Health Administration to enter the workplace . . . *forthwith* during regular working hours or at other reasonable times, and to inspect and investigate in a reasonable manner and to a reasonable extent . . . the workplace . . . .

*Marshall v. Chromalloy American Corp., Federal Malleable Division,* 433 F.Supp. 330, 333 (E.D.Wis.1977), *aff'd,* 589 F.2d 1335 (7th Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979) (emphasis supplied). Although this purge order echoed much of the warrant's language verbatim, it used the term "forthwith," instead of designating a specific time period for execution of the warrant. This served to change the time requirements for returning the warrant.[7]

■ Although Federal Casting admits that the order gave "new life" to the warrant, it alleges that by ordering compliance with his order "forthwith," Judge Reynolds was resurrecting the warrant's ten-day time limit. Federal Casting relies on criminal search cases to support its view. *See, e.g., United States v. Nepstead,* 424 F.2d 269, 271 (9th Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 50, 27 L.Ed.2d 86 (1970); *Spinelli v. United States,* 382 F.2d 871, 885 (8th Cir. 1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). These cases stand for the general proposi-

---

**6.** Because the bulk of the delay between issuance of the warrant and the inspection was due to the company's efforts to quash the warrant, the company cannot claim any increased expectation of privacy from the passage of time. The situation would be far different if the Secretary had simply delayed execution of the warrant on his own initiative.

**7.** Further, the contempt order changed the nature of the parties' obligations. The inspection warrant permitted OSHA to inspect for ten days after its issuance, but the contempt order placed an affirmative duty upon Federal Casting to *permit* the inspection.

The fact that the contempt order changed the nature of the warrant does not, however, change the fact that the inspection was conducted pursuant to a warrant. Thus, the inspection was not a warrantless one. A contempt order invariably changes the nature of obligations under a court order, for it places an affirmative obligation upon the defendant to perform the act commanded. *United States v. UMW,* 330 U.S. 258, 300 n.73, 67 S.Ct. 677, 699 n.73, 91 L.Ed. 884 (1947). Federal Casting recognizes this in its brief by admitting that the contempt order gave "new life" to the warrant.

tion that "forthwith" is synonymous with "reasonable." *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976) ("It is generally accepted, however, that a warrant need only be executed within a *reasonable* time after its issuance, notwithstanding the presence of 'forthwith' language in the complaint."). *Accord, Spinelli v. United States*, 382 F.2d 871, 885 (8th Cir. 1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Federal Casting, however, would have us give these cases the additional construction that "forthwith" cannot exceed ten days. But to add this gloss to the "reasonableness" rule would be to read the Federal Rules of Criminal Procedure into the requirements for administrative search warrants. Rule 41 establishes ten days as the outside limit on the time permitted between the issuance and execution of a criminal search warrant. Fed.R.Crim.P. 41(c)(1).[8] Courts, however, have consistently recognized the differences between criminal and administrative probable cause and have refused to extend the specific requirements governing criminal searches to the administrative sphere. *See, e.g., Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320–21, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978). Probable cause for an administrative search can certainly last longer than probable cause for a criminal search. For example, where inspections are conducted pursuant to employee complaints, courts have found probable cause for warrants (and inspections) far longer than ten days after the complaint. *See, e.g., Burkart Randall Division of Tex-*

*tron, Inc. v. Marshall*, 625 F.2d 1313, 1322 (7th Cir. 1980) (warrant not stale when issued pursuant to five and six month old complaints); *In re Inspection of Central Mine Equipment Co.*, 7 OSHC (BNA) 1185, 1189 (E.D.Mo.), *vacated on other grounds*, 608 F.2d 719 (8th Cir. 1979) (OSHA warrant valid when based on eight month old information). *See Hern Iron Works, Inc. v. Donovan*, 670 F.2d 838, 840 (9th Cir. 1982) ("In determining the degree of simultaneity needed for filing of an employee complaint and issuance of an OSHA warrant, courts have applied a more relaxed standard of probable cause than that required for criminal warrants.").

■ Thus, "'forthwith' requires no more nor less than reasonable promptness, diligence, or dispatch in executing a warrant, considering the difficulties actually encountered in attempting to perform the task." *United States v. Bradley*, 428 F.2d 1013, 1016 (5th Cir. 1970) (footnote omitted). *Accord, United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). Under the specific circumstances of this case, we find that OSHA acted with reasonable "promptness, diligence, or dispatch" in executing the warrant. OSHA inspected Federal Casting's foundry approximately sixty days after the company's final appeal had been denied. The NEP program required special training for OSHA agents involved in making the inspections. The agents were prepared to conduct the inspection of Federal Casting

---

**8.** Rule 41 provides that a warrant "shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property or person specified." Fed.R.Crim.P. 41(c)(1). Thus when the term "forthwith" appears in a criminal warrant, clearly the warrant must be returned within ten days.

The company also claims that, because Judge Reynolds relied, in part, on the Federal Rules of Criminal Procedure to demonstrate that magistrates were empowered to issue inspection warrants, his use of the term "forthwith" was therefore intended to be interpreted as it would be if appearing in a criminal search warrant. We reject this argument. Judge Reynolds'

mention of the Rules of Criminal Procedure was made in the context of a discussion of the authority of magistrates in *all* cases under 28 U.S.C. § 636(a), which provides that the magistrate's power *includes*, but is not limited to, the powers provided in the Federal Rules of Criminal Procedure. *Marshall v. Chromalloy Am. Corp., Fed. Malleable Div.*, 433 F.Supp. 330, 332 (E.D.Wis.1977), *aff'd*, 589 F.2d 1355 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). The court was clearly aware, however, that the standards governing administrative searches were broader than those governing criminal searches, and phrased the contempt order accordingly. *Id.* at 332–33.

when the warrant was initially applied for, and, in fact, tried to execute the warrant the same day that it was issued. It would be unreasonable, however, to expect that OSHA could continue to have trained agents available, who could complete the inspection, on short notice, throughout the period of protracted litigation brought about by the company's refusal to comply with the warrant.

When the contempt order was initially issued, OSHA promptly began its safety inspection. Its health inspection, however, was blocked by court action for almost a year and a half. Although OSHA was not under legal compulsion to wait beyond the lifting of the stay order on January 2, 1979, we do not believe that doing so was unreasonable. In light of Federal Casting's strong and continued resistance to the inspection and clear intention to appeal to the Supreme Court, it was not unreasonable for OSHA to await final disposition of the controversy in the courts. We reject Federal Casting's claim that there is no evidence that these prudential considerations formed the reason for the delay. The uncontroverted affidavit evidence in the record demonstrates that these considerations in fact accounted for the delay. The inspection was completed approximately sixty days after the company's appeals had been exhausted. A two month period to put together an inspection team to complete the inspection under a program previously abolished was not unreasonable.[9] Thus, the inspection was completed within the terms of the warrant, as modified by the contempt order.[10]

## IV

We hold, therefore, that under the particular circumstances of this case, the inspection at issue did not violate the Fourth Amendment. Accordingly, the order of the district court granting summary judgment is Affirmed.

**9.** We emphasize, however, that the question is relatively close. Our decision rests on the particular facts of this case and does not relieve OSHA of the obligation to act promptly on contempt orders enforcing warrants.

**10.** Because of the decision we reach here, we express no opinion on the issue, unsettled in this circuit, whether, or to what extent, the exclusionary rule applies to administrative proceedings before OSHA.