### In the Matter of Establishment Inspection of TEXAS TANK CAR WORKS.

### Inspection Warrant No. 6–82–1M. No. CA–6–82–22–E.

United States District Court, N.D. Texas, San Angelo Division.

Feb. 24, 1984.

## OPINION

MAHON, District Judge.

Petitioner Texas Tank Car Works filed its petition to quash inspection warrant on April 7, 1982. Respondent is the Occupational Safety and Health Administration (hereinafter sometimes referred to as OSHA).

On October 20, 1981, OSHA Austin area Safety Compliance Officer W.B. Cunningham sought to make a general administrative plan inspection of Petitioner and was permitted to conduct an accident record review. Such review revealed that Petitioner's lost work day injury rate (herein referred to as LWDI rate) was above the national manufacturing average. Cunningham's request for a safety inspection was refused and OSHA thereafter obtained an inspection warrant from Magistrate Philip Lane on January 13, 1982. An attempt to serve the warrant on January 14, 1982, failed because bad weather had halted Petitioner's operations. A second warrant request was again granted by Magistrate Lane on April 6, 1982, for inspection pursuant to a general administrative plan.

Texas Tank Car Works filed its petition to quash on April 7, 1982. Magistrate Bill Brister conducted a hearing on the petition on June 8, 1982, pursuant to the April 12, 1982 order of Chief Judge Halbert O. Woodward. In a written report and recommendation filed November 16, 1982, the magistrate recommended denial of the petition to quash, citation in civil contempt and imposition of a fine for each day that inspection under the warrant was refused following entry of a final order denying the petition to quash. Petitioner's written objections to the magistrate's report dated November 24, 1982, Respondent's response to Petitioner's objections dated December 29, 1982, and Petitioner's answer to Respondent's responses dated January 17, 1983, were subsequently filed. Having been referred to the court by Judge Woodward's April 19, 1982 order and having considered the magistrate's report and recommendation, and the parties objections, response and answer, the court determines the objections of Texas Tank Car Works should be overruled and a judgment entered substantially as recommended by the magistrate.

Petitioner objects to the magistrate's report and recommendations as follows:

1. OSHA Instruction CPL 2.25B (herein referred to as CPL 2.25B) was not placed in evidence at the hearing on the petition to quash and cannot be considered in the probable cause finding.

2. The inspection plan is not valid because there is no showing that Petitioner's establishment or industry group were less safe than others not yet inspected or scheduled for inspection.

3. The warrant application does not show how Petitioner's industry or establishment was selected under the inspection plan.

4. The evidence shows Petitioner's LWDI rate was below the national manufacturing average, precluding inspection.

5. The scope of the inspection allowed under the warrant is overly-broad.

Petitioner's first objection concerns the sufficiency of the evidence used

in the issuing magistrate's probable cause determination. Probable cause in the criminal sense is not required for an OSHA inspection warrant. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Administrative probable cause may be based either on (1) specific evidence of an existing violation or:

> (2) a general administrative plan for the enforcement of the [Occupational Safety and Health] Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area. (footnote omitted)

*Id.* 436 U.S. at 321, 98 S.Ct. at 1824. Probable cause in this case is based on the second standard, a neutral inspection program. To meet this probable cause requirement, the applicant must at least show (1) a reasonable legislative or administrative inspection program exists and (2) the desired inspection fits within the program. *Chicago Zoological Society v. Donovan,* 558 F.Supp. 1147 (N.D.Ill.1983).

In its warrant application Respondent described an administrative program that led to Petitioner's selection for inspection. A copy of the internal OSHA directive on the program, CPL 2.25B, was attached to the application and incorporated therein, according to W.B. Cunningham's application affidavit of April 6, 1982, Paragraph No. 7.

■ Petitioner objects that CPL 2.25B cannot be considered by the court in reviewing probable cause because it was not in evidence at the June 8, 1982 hearing. Magistrate Brister found that a copy of CPL 2.25B had been attached to the warrant application (R. p. 7), and the application so indicates. CPL 2.25B however was not introduced at the hearing and since it is an internal operating document judicial notice cannot be taken. The absence of CPL 2.25B from the hearing is nonetheless irrelevant to a probable cause review. A reviewing court may consider only the information before the issuing magistrate except in the case of intentional or reckless falsehood. *West Point-Pepperall, Incorporated v. Donovan,* 689 F.2d 950, 960

(11th Cir.1982). While errors in the warrant application were found at the hearing, they were neither intentional nor reckless, nor did they affect probable cause. Since CPL 2.25B was properly before the issuing magistrate it may be considered in reviewing the probable cause determination.

■ Petitioner next objects that the magistrate should have examined the plan to assure that Petitioner's establishment and the tank car repair industry were not slated for inspection before others with a greater hazard potential. In effect Petitioner asks that the magistrate review the policy considerations behind OSHA's development of the plan. It is not the magistrate's duty to examine the agency's decision to adopt the plan. *Donovan v. Wollaston Alloys, Incorporated,* 695 F.2d 1 (1st Cir.1982). The magistrate need only assure that the plan provides neutral and non-arbitrary selection of establishments and industries before approving an inspection scheduled pursuant to the plan.

■ CPL 2.25B sets out:

> ... the steps to be followed and the criteria to be applied in selecting workplace establishments for programmed inspection.

The affidavit of W.B. Cunningham III, describes the CPL 2.25B plan. In essence, establishments in the area are selected consecutively from a list of high safety hazard industries supplied by the national office. They are placed in an annual inspection cycle and each establishment is inspected in an order which conserves inspection resources. All establishments are to be inspected before a new cycle begins. The CPL 2.25B plan has been specifically upheld as meeting the *Barlow's* neutrality requirement in *Ingersoll-Rand Company v. Donovan,* 540 F.Supp. 222 (M.D.Pa. 1982). Similar OSHA plans have been upheld in *Donovan v. Wollaston Alloys, Incorporated, supra* at 2 n. 1; and *Stoddard Lumber Company v. Marshall,* 627 F.2d 984, 985 n. 2 (9th Cir.1980). In *Wollaston Alloys, supra* at 5 the court found a showing that the plan provided non-arbitrary

selection of establishments to be sufficient to uphold the plan's validity. A plan of much less specificity was upheld in *Marshall v. Chromalloy American Corporation,* 589 F.2d 1335 (7th Cir.1979), *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), where the court stated at page 1342:

In effect Chromalloy asks this court to hold that the Secretary would have to show, every time he wants a warrant, a complete set of updated industry statistics, the rationale for applying a particular index factor to the foundry industry, and the reason for inspecting foundries in lieu of another industry. Such a massive evidentiary showing of particularized cause ... is not required here either by statute or previous court decisions.

According to Section H(4) of CPL 2.25B establishments once selected can be inspected in any order that conserves resources and the worst industries or establishments need not be scheduled first. Since the plan provides a valid, non-arbitrary selection process, it meets the *Barlow's* neutrality requirement and Petitioner cannot challenge the warrant on grounds that the plan could have been better designed.

Petitioner next objects that the warrant application fails to show its particular industry and workplace were selected pursuant to the plan. The application states the tank car repair industry's Standard Industrial Classification Code but the Code does not appear on any list ranking industries nor does the establishment name appear on any list in the application.

▇ Inspector Cunningham stated in his affidavit that Petitioner was slated for inspection pursuant to the plan. An OSHA inspector's sworn statement is sufficient to show that an establishment was selected according to the plan, *Wollaston Alloys, supra* at 6, and the Secretary's failure to provide individual statistics on Petitioner's business does not make the warrant defective, *Stoddard Lumber Company, Incorporated v. Marshall, supra* at 988. Since the warrant application shows Petitioner

was selected pursuant to a valid, neutral inspection plan the minimum of the *Barlow's* probable cause requirement is met. The court does not suggest that the Secretary's warrant application did more than meet the bare minimum of the probable cause requirement. If the Secretary had made a clearer showing of Petitioner's selection, the delay created in this petition might have been averted. The court is compelled to uphold the probable cause determination in its review capacity but as an issuing court might have required a more explicit showing of the existence of probable cause to inspect.

▇ Petitioner next objects that its LWDI rate was below the national manufacturing average when the warrant issued thereby precluding inspection. Under CPL 2.25B, Appendix D–6, and OSHA regulations an inspection may not be conducted if the establishment LWDI rate is below the national rate for manufacturing. When Inspector Cunningham conducted an injury records review of Petitioner in October of 1981, he calculated the LWDI rate to be 17.58 days lost. At that time the national average was 5.7. A new LWDI rate of 8.45 was computed on April 6, 1982, when the second warrant was served, but the warrant application had stated the old rate of 17.58. The 8.45 rate still exceeded the national average so that inspection was required. At the June hearing, Petitioner's employee James H. Green, Sr., testified that he computed the LWDI rate to be 2.4975, below the national average and Petitioner seeks to void the warrant based on the allegedly false information contained in the affidavit and on Petitioner's alleged exclusion from inspection due to the low LWDI rate.

Magistrate Brister chose the OSHA figure of 8.45 as the credible LWDI rate at the time of issuance. Although misleading the 17.48 figure has no impact on the probable cause determination because 8.45 exceeds the national average. Unintentional errors will invalidate a warrant only if the errors affect probable cause. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57

L.Ed.2d 667 (1978). The warrant remains valid in spite of the LWDI rate misstatement.

■ Petitioner's final objection concerns the scope of the inspection allowed. The warrant states only the street address of the establishment. Petitioner contends that inspection should be limited to those areas where accidents have occurred. CPL 2.25B, Section I provides for comprehensive inspection of an establishment except for low-hazard areas such as offices. A general inspection warrant must be comprehensive in scope because the location of violations is not known. *Marshall v. Chromalloy, supra; Ingersoll-Rand Co. v. Donovan, supra.* The warrant is not too broad for an administrative inspection.

■ The Secretary of Labor requests that Petitioner be assessed a fine of $2,000.00 for its initial refusal to honor the warrant and an additional $500.00 for each day that the refusal continues. The magistrate recommends that Petitioner be held in civil contempt for its April 6, 1982 refusal and be fined for each day after entry of a final order that inspection is refused. The Ninth Circuit in *Stoddard Lumber, supra* at 986, upheld a district court contempt fine of $500 plus $100 for each succeeding refusal. The district court imposed a $1,000 fine in a warrant decision affirmed by the Seventh Circuit in *Matter of Establishment Inspection of Gilbert and Bennett Manufacturing Company,* 589 F.2d 1335, 1337 n. 2 (7th Cir.1979). In *Ingersoll-Rand Company, supra* at 226, the court set a fine of $500 per day for each day inspection was refused. Such fines were approved in this circuit in *Marshall v. Shellcast Corporation,* 592 F.2d 1369, 1372 n. 7 (5th Cir. 1979). Other courts have assessed the costs of enforcement against parties held in contempt for opposing a valid inspection warrant. See *Donovan v. Athenian Marble Corporation,* No. 81–0795–BT (W.D. Okl. July 15, 1982). The court finds Petitioner in contempt, and a fine in the amount of $1,000.00 should be imposed and in addition thereto a fine of $500.00 for each day after the date of a separate judg-

ment herein that it continues to refuse inspection.

■ Petitioner's good faith in seeking to quash the warrant is irrelevant to the civil contempt fine. *McComb v. Jacksonville Paper Company,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed.2d 599 (1949). Although this warrant, due to Petitioner's efforts, is now almost two years old it remains a valid authorization for an administrative search. *Federal Casting Division v. Donovan,* 684 F.2d 504 (7th Cir.1982).

In summary, the court finds:

1. the petition to quash should be denied; and

2. Petitioner should be adjudged in civil contempt and fined $1,000.00 plus an additional $500 for each day after the date of the separate judgment entered herein that inspection is attempted and refused.